DUANE MORRIS LLP
Evangelos Michailidis
1540 Broadway
New York, New York 10036
Phone: (212) 471-1864
Email: emichailidis@duanemorris.com
*Attorneys for Plaintiff New York Bay Capital, LLC.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

New York Bay Capital, LLC,

                              Plaintiff,                     Case No. 1:19-cv-03618-GHW

          -vs-

Cobalt Holdings, Inc.,

                              Defendant.

-------------------------------------------------------------------X

**PLAINTIFF NEW YORK BAY CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY DEFENDANT'S FINRA ARBITRATION**

DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Plaintiff New York Bay Capital, LLC.*

*Table of Contents*

*Page*

PRELIMINARY STATEMENT ......................................................................................................1

FACTS ...........................................................................................................................................3

    The Advisory Contract.......................................................................................................... 3

    NYBAY rendered promised financial advisory services........................................................ 5

    Forum Selection Clause & Merger Clause ............................................................................ 6

    Cobalt's Excuses for Non-Payment....................................................................................... 6

    FINRA Arbitration................................................................................................................. 8

I.     THIS COURT HAS THE POWER TO STAY THE FINRA ARBITRATION
AND SHOULD EXERCISE THIS POWER TO PRESERVE THE INTENT OF
THE PARTIES TO RESOLVE DISPUTES THROUGH JUDICIAL ACTION ...............9

II.    THE ADVISORY CONTRACT REQUIRES ALL DISPUTES AND
PROCEEDINGS TO BE RESOLVED BY JUDICIAL ACTION IN THIS
COURT NOT ARBITRATION.......................................................................................10

III.   THE FORUM SELECTION CLAUSE DISPLACES THE FINRA
ARBITRATION EVEN THOUGH THE CLAIMS IN THE FINRA
ARBITRATION AND THE SDNY ACTION ARE DIFFERENT .................................13

IV.   THE FORUM SELECTION CLAUSE DISPLACES THE FINRA
ARBITRATION EVEN THOUGH THE PARTIES IN THE FINRA
ARBITRATION AND THE SDNY ACTION ARE DIFFERENT .................................14

V.    FINRA RULE 12200 IS INAPPLICABLE BECAUSE COBALT IS NOT A
"CUSTOMER" UNDER THE FINRA CODE.................................................................15

VI.   COBALT WAS REQUIRED BUT FAILED TO ASSERT FRAUD AS A
COMPULSORY COUNTERCLAIM IN THE SDNY ACTION ....................................17

CONCLUSION.............................................................................................................................18

## TABLE OF AUTHORITIES

*Page*

**Cases**

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991) ..............................................................18

*Applied Energetics, Inc. v. NewOak Capital Mkts., L.L.C.,* 645 F.3d 522 (2d Cir. 2011) ...........................................................................................................................12

*Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345 (S.D.N.Y. 2014).............................10

*Califano v. Yamasaki,* 442 U.S. 682 (1979) ................................................................10

*Citigroup Global Mkts, Inc. v. Abbar,* 761 F.3d 268 (2d Cir. 2014) ...........................17

*Citigroup Global Mkts. Inc. v. All Children's Hospital, Inc.*, 5 F. Supp. 3d 537 (S.D.N.Y. 2014).................................................................................................. 12-14

*Deutsche Bank Sec., Inc. v. Roskos*, No. 15CV534-LTS, 2016 WL 9446863 (S.D.N.Y. Aug. 4, 2016) ...........................................................................................16

*Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One*, No. 13 Civ. 1319(PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013) ........................ 11-13

*Greenfield v. Philles Records*, 780 N.E.2d 166, 98 N.Y.2d 562 (2002).......................10

*Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002).........................................10

*Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.,* 975 F. Supp. 483 (W.D.N.Y. 1997) ......................................................................................................14

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004)......................................18

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568 (S.D.N.Y. 2010) .......................................................................................................18

*Nanopierce Tech., Inc. v. Southbridge Capital Mgmt.,* No. 02-0767, 2003 WL 22882137 (S.D.N.Y. Dec. 4, 2003).........................................................................14

*NML Capital, Ltd. v. Republic of Argentina,* 699 F.3d 246 (2d Cir. 2012)....................9

*In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351 (S.D.N.Y. 2011) .................................15

*Premium Risk Grp., Inc. v. Legion Ins. Co.*, 294 A.D.2d 345, 741 N.Y.S.2d 563 (2d Dep't 2002)........................................................................................................10

*UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013).......................16

*United States v. Aquavella*, 615 F.2d 12 (2d Cir. 1979) ................................................................18

*Weingard v. Telepathy, Inc.*, No. 05 Civ. 2024(MBM), 2005 WL 2990645
    (S.D.N.Y. Nov. 7, 2005) ...................................................................................... 14-15

**Other Authorities**

FED. R. CIV. P. 13(a) .................................................................................................. 17-18

FED. R. CIV. P. 13(c) ....................................................................................................17

FINRA Rule 12200 .........................................................................................................15

Plaintiff New York Bay Capital, LLC ("<u>NYBAY</u>"), by and through its counsel, file this motion to stay defendant Cobalt Holdings, Inc. ("<u>Cobalt</u>") from proceeding with an arbitration it filed before the Financial Regulatory Authority ("<u>FINRA</u>"), on or around January 27, 2020 (Arbitration Number 20-00308) for the reasons set forth below.

## PRELIMINARY STATEMENT

This is a straightforward breach of contract case. NYBAY entered into an agreement with Cobalt to act as its financial advisor in connection with its efforts to raise funds to develop a massive telecommunications project in Mexico. The engagement was successful and culminated in substantial debt financing transaction. According to the clear terms of the parties' agreement, NYBAY is entitled to a percentage of that transaction as payment for its contribution in facilitating that deal. Cobalt refuses to honor the clear terms of that agreement, necessitating the commencement of this action.

Cobalt has hurled any number of meritless excuses for non-payment during this protracted dispute, in which Cobalt has cycled through two law firms and is now on its third. A recurring pretext is that Cobalt was somehow deceived into entering into the agreement with NYBAY based on unspecified misrepresentations and omissions about its status as a broker dealer. Cobalt first raised this position to NYBAY in the summer of 2018 when Cobalt was represented by the firm Nixon Peabody LLP. Cobalt again raised the issue in the summer of 2019 when Cobalt was represented by the firm Reed Smith LLP.

Each time, NYBAY was able to swat away this baseless assertion by reminding Cobalt and its counsel that page 1 of the parties' contract conspicuously disclaims that NYBAY is *not* a broker dealer. As a result, when it came time for Cobalt to answer the Complaint, Cobalt did not assert a counterclaim for fraud or any other counterclaim for that matter.

However, on January 27, 2020, approximately 9 months after the commencement of this action and in the middle of revealing document discovery, Cobalt (n/k/a Gignet, Inc.) initiated an arbitration with FINRA against NYBAY's managing partner, Mr. Julio A. Marquez, and an important business affiliate of NYBAY's, Young America Capital LLC, asserting the familiar pretext that Mr. Marquez somehow defrauded Cobalt because NYBAY is not a registered broker dealer. The fact that the fraud claim is entirely without merit is beside the point for purposes of this motion. The arbitration itself is patently improper and should be stayed in favor of this action for the following five reasons:

First, the parties' contract contains a broad and mandatory forum selection provision consenting to the jurisdiction of this Court for "any action, suit or proceeding arising out of or relating to this Engagement or any of the transactions contemplated hereby." Furthermore, the agreement contains a merger clause that makes it abundantly clear that the contract represents the "entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and Engagements between the parties with respect to the subject matter hereof." This Court has routinely held that such provisions merit staying a parallel FINRA arbitration.

Second, the fact that the Cobalt's FINRA arbitration involves different claims is of no effect on the governance of the parties' forum selection clause over the FINRA dispute because the FINRA arbitration claims are "inextricably linked" to the claims before this Court and both actions involve the same contract, transaction and services.

Third, the fact that Cobalt's FINRA arbitration involves different parties is also of no effect on the governance of the forum selection clause over the FINRA dispute because Mr. Marquez and Young America Capital, LLC are both "closely related" to the issues pending

before this Court. Mr. Marquez is the managing partner of NYBAY, negotiated the terms of the contract with Cobalt and rendered services on behalf of NYBAY for Cobalt pursuant to that agreement. Young America Capital, LLC is a potential third party beneficiary of the agreement if the parties required the services of a broker dealer to consummate a transaction.

Fourth, FINRA Rule 12200, which essentially mandates arbitration between "customers" and members of FINRA, does not apply in this case because Cobalt is not a "customer" of either Mr. Marquez or Young America Capital, LLC. Cobalt does not have an account with either Mr. Marquez or Young America Capital, LLC and has not purchased goods or services from Mr. Marquez, in his individual capacity, or Young America Capital, LLC.

Fifth, Cobalt's FINRA arbitration claims amount to compulsory counterclaims that Cobalt failed to assert in a timely fashion.

For all of these reasons and in the interest of judicial economy, NYBAY respectfully requests that this Court grant NYBAY's motion and stay Cobalt's FINRA arbitration.

## FACTS

NYBAY is a New York-based boutique financial advisory firm experienced in foreign markets, especially Mexico. Cobalt is a wireless broadband development company that, for the period relevant to this action, was seeking to develop an $82.5 million telecommunications project in a region of Mexico known as the Riviera Maya (the "Project"). Cobalt was looking to raise funds to do so and required the assistance of a financial advisor suited to provide such services in Mexico.

### *The Advisory Contract*

On July 15, 2017, Cobalt and NYBAY entered into a mutual non-disclosure agreement (the "NDA") to exchange and evaluate confidential documents. The NDA contained an explicit and broad non-circumvention provision. Thereafter, on August 10, 2017, the parties entered into

3

an agreement (the "Advisory Contract") where NYBAY agreed "to act as [Cobalt's] financial advisor in connection with the intended US$ 25 million debt or equity investment into the Project from third-parties (the "Transaction")." A copy of the Advisory Contract is attached as Exhibit 1 to the Declaration of Evangelos Michailidis, dated March 25, 2020 ("Michailidis Dec.").

It bears elaborating on precisely what services NYBAY agreed to render for Cobalt as they are a central issue in this matter and the FINRA arbitration. Section 1 of the Advisory Contract describes the services as follows:

> Services to be Rendered. In connection with this engagement, NYBAY will provide advice and assist [Cobalt] with the business plan, valuation, structuring, negotiation and implementation of the Transaction. In particular, we will use our best efforts to identify and introduce to you potential investors, partners and/or lenders to complete the proposed Transaction, as well as assist you in the preparation and presentation of analyses required by such third parties, or other parties identified by you, to properly evaluate these opportunities.

The Advisory Contract conspicuously disclaims that NYBAY is not a broker-dealer, and should such service becomes necessary, it will refer Cobalt to Young America Capital LLC ("YAC"):

> …NYBAY is neither a law firm nor an accounting/tax firm nor a broker-dealer. Should [Cobalt] require the services of a law firm or accounting/tax firm, we may recommend several. Should [Cobalt] require a U.S. broker-dealer, NYBAY will refer [Cobalt] to Young America Capital LLC.

Cobalt agreed to pay NYBAY a non-refundable retainer of $15,000 for credit against future success fees. Specifically, Cobalt agreed to pay NYBAY for its financial advisory services either 3% of any loan amount in a debt transaction or 6% of any investment in an equity transaction, provided the lender or investor was either (i) introduced to the Cobalt by NYBAY or

(ii) participated in the debt or equity transaction wholly or partly as a result of NYBAY's efforts. All payments were to be "payable [to NYBAY]…on the closing day and as a condition to closing…" Furthermore, Section 3 provides that "[i]n the event that a portion of the investment amount or loan is paid at a date after the initial closing…the fees will be paid…when [Cobalt] or any Project-related person or entity receives additional proceeds."

<u>*NYBAY rendered promised financial advisory services*</u>

In keeping with the scope of services under Section 1 of the Advisory Contract, NYBAY prepared and presented on behalf of Cobalt to potential third-party lenders, investors and partners, comprehensive, detailed and extensive confidential work product for the Project spanning nearly a year's time (the "<u>Work Product</u>"). The Work Product, which was widely shared with potential investors, included 1) business plans; 2) business models; 3) multiple series of spreadsheets and financial evaluations and analyses; 4) marketing and related presentation materials; and 5) Spanish translations for the use of complex and technical documents for the Project.

Further, NYBAY introduced various sources of potential funding that created a marketplace of competition and facilitated an eventual transaction between Cobalt and one of the leading multinational financial services company, Credit Suisse Group AG. A business unit of one of the corporate divisions of Credit Suisse Group AG, Credit Suisse Asset Management ("<u>Credit Suisse</u>"), ended up agreeing to provide a multi-million dollar credit facility to Cobalt (through a Mexican subsidiary) for the Project (the "<u>Debt Financing</u>"). The Debt Financing closed on or around May 31, 2018 (the "<u>Closing</u>"). This transaction did not involve securities.

Despite keeping its end of the bargain and diligently performing the financial advisory services it promised, Cobalt refuses to pay NYBAY giving rise to NYBAY's claims against Cobalt for, *inter alia*, breach of the Advisory Contract. NYBAY filed its Complaint against

Cobalt in this Court on April 23, 2019 (the "SDNY Action"), as agreed to between the parties

and required under the clear and unequivocal terms of the Advisory Contract.

*Forum Selection Clause & Merger Clause*

Section 7 of the Advisory Contract states clearly that the parties must resolve "any action,

suit or proceeding arising out of or relating to this Engagement or any of the transactions

contemplated hereby" exclusively in this Court (the "Forum Selection Clause"):

> Each party hereby irrevocably submits to the exclusive jurisdiction
> of the United States District Court for the Southern District of New
> York in any action, suit or proceeding arising out of or relating to
> this Engagement or any of the transactions contemplated hereby,
> and agrees that any such action, suit or proceeding shall be brought
> only in such court.

The Forum Selection Clause makes no reference to arbitration even though it does

include mandatory mediation as a form of alternative dispute resolution: "Prior to filing a

lawsuit, the parties hereby agree that they will attempt to resolve their differences first by

submitting the matter for resolution to a mediator…"

The merger clause at Section 9 of the Advisory Contract further reinforces the point that

the Forum Selection Clause is the only agreement between the parties with regards to dispute

resolution (the "Merger Clause"):

> This [Advisory Contract] sets for the entire understanding of the parties relating to
> the subject matter hereof and supersedes and cancels any prior communications,
> understandings and Engagements between the parties with respect to the subject
> matter hereof.

*Cobalt's Excuses for Non-Payment*

In the two years that have passed since NYBAY initially demanded payment from

Cobalt, Cobalt has offered three excuses for non-payment.  First, Cobalt maintains that it is not

paying any portion of the fees due NYBAY because it is not a registered United States broker

dealer. However, the Project is a purely foreign transaction in Mexico by a Mexican lender doing

business in Mexico subject to the telecommunications and other regulatory authority of the Mexican government.

Furthermore, the initial transaction involved was for pure debt in the form of a revolving credit facility line from an international lender. Therefore, there is no basis to say that the sale of United States securities is involved that would have required the services of a registered broker-dealer in the United States.

Moreover, Cobalt explicitly "accepted" and "agreed" under Section 1 of the Advisory Contract, that the services being rendered by NYBAY for which their fees would be earned was not that of a United States broker-dealer, and that if the services of one was required NYBAY would refer Cobalt to YAC. The parties agreed that no United States broker dealer representation was required and therefore no such referral was made through and including the date of the Closing.

Second, Cobalt alleges that NYBAY "did not perform" the services it promised under the Advisory Contract. However, the comprehensive, extensive and detailed Work Product generated, presented and negotiated on behalf of Cobalt by NYBAY with potential third party lenders, investors, or partners identified and introduced to Cobalt by NYBAY, or other third parties identified and introduced by Cobalt to NYBAY, spanning nearly a year's time through the date of the successful Closing, shows that this pretext does not hold up.

Third, Cobalt alleges that it had to pay closing fees to Credit Suisse for the First Round Financing and, further, that NYBAY did not introduce this lender to Cobalt. The fees that a multinational bank or other lenders charge to close for a substantial $32.5 million credit facility, involving project finance or otherwise, are on their face separate charges. Payment for fees due and payable to NYBAY are under an entirely separate agreement for distinctly different financial

advisory, merger and acquisition and related services. Notwithstanding the foregoing, NYBAY was indeed instrumental in identifying, introducing and actively facilitating the procurement of Credit Suisse to finance the Project.

Each of Cobalt's excuses are set forth in NYBAY's Complaint at paragraphs 61-79 (ECF no. 1). Cobalt answered the Complaint on September 6, 2019 and asserted fourteen affirmative defenses in the most conclusory fashion. Cobalt did not file a counterclaim against NYBAY though.

<em>FINRA Arbitration</em>

On January 27, 2020, approximately 9 months after the commencement of the SDNY Action and in the middle of document discovery in the SDNY Action, Cobalt (n/k/a Gignet, Inc.) commenced an arbitration with FINRA against NYBAY's managing partner, Mr. Julio A. Marquez, and YAC (the "FINRA Arbitration"). *See* Statement of Claim, Michailidis Dec., Exhibit 2. Cobalt alleges that Mr. Marquez violated federal securities laws and FINRA Rules by having NYBAY act as an investment bank to Cobalt even though it is not a registered broker dealer and, further, that YAC failed to supervise Mr. Marquez's investment banking activities. Cobalt's claim presupposes that NYBAY acted as an investment bank rather than a financial advisor.

The gravamen of the FINRA Arbitration, however, is that Mr. Marquez fraudulently induced Cobalt into entering the Advisory Contract, *notwithstanding that NYBAY conspicuously disclaims on page 1 of the Advisory Contract that it is not a broker dealer*. As alleged in its Statement of Claim under the heading "MARQUEZ'S DECEPTION," Cobalt alleges that "Marquez held himself and NY Bay out to the public as registered investment banking when they clearly are not" and, further, that "[t]his operated as a fraud and deception upon Cobalt which justifiably relied on these misrepresentations and omissions of material facts concerning

8

NY Bay as an unregistered broker/dealer." Under Count One of the Statement of Claim, Cobalt

alleges, in conclusory fashion, that:

> 24.    In connection with his negotiations with and on behalf of
> Cobalt, Marquez made materially false statements and omissions of
> material facts, and failed to disclose material facts; including but not
> limited to;
>> a.    That NY Bay was not a registered broker/dealer
>> under the Securities Act of 1933, and was therefore not
>> legally permitted to engage in investment banking business;
>> b.    That Marquez did not possess the requisite
>> registration to participate in investment banking transactions
>> as an investment banking representative;
>> c.    That he failed to notify his member firm about his
>> undisclosed investment banking business through NY Bay,
>> which he was required to do under SEC regulation and
>> FINRA rules;
>> d.    that he engaged in acts, practices and a course of
>> business conduct through NY Bay that operated as a fraud or
>> deceit upon the Claimant with regard to the Investment
>> Banking Contract.
> 25. As a result of Marquez's intentional fraudulent acts and
> omissions, Cobalt has been damaged in an amount to be determined
> at the hearing in the approximate amount of $500,000.

The SDNY Action and the FINRA Action involve the same underlying facts as they both

relate to the services NYBAY performed for Cobalt pursuant to the Advisory Contract.

Therefore, both actions involve the Advisory Contract, the Project, the Transaction, the Debt

Financing, the Closing, and the same witnesses.

## I.    THIS COURT HAS THE POWER TO STAY THE FINRA ARBITRATION AND SHOULD EXERCISE THIS POWER TO PRESERVE THE INTENT OF THE PARTIES TO RESOLVE DISPUTES THROUGH JUDICIAL ACTION

It is well established that a "federal court sitting as a court of equity having personal

jurisdiction over a party has power to enjoin him from committing acts elsewhere." *NML*

*Capital, Ltd. v. Republic of Argentina,* 699 F.3d 246, 263 (2d Cir. 2012). Only "the clearest

command from Congress" may strip a district court of this power. *Califano v. Yamasaki,* 442 U.S. 682, 705 (1979). The Federal Arbitration Act imposes no such limitation on this Court.

Therefore, this Court has authority to enjoin Cobalt from proceeding with the FINRA Arbitration. In addition, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002). NYBAY and Cobalt unequivocally agreed to resolve their disputes exclusively in this Court, not in arbitration. This Court should preserve their intent, as detailed below, and stay the FINRA Arbitration.

## II.  THE ADVISORY CONTRACT REQUIRES ALL DISPUTES AND PROCEEDINGS TO BE RESOLVED BY JUDICIAL ACTION IN THIS COURT NOT ARBITRATION

It is well-settled law in New York that a contractual forum selection clause is prima facie valid unless proven unreasonable by the party defying the forum selection clause. *See e.g., Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 359 (S.D.N.Y. 2014); *Premium Risk Grp., Inc. v. Legion Ins. Co.*, 294 A.D.2d 345, 346, 741 N.Y.S.2d 563, 564-65 (2d Dep't 2002).  Moreover, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing[.]' Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records*, 780 N.E.2d 166, 98 N.Y.2d 562, 569 (2002) (internal citations omitted).

NYBAY and Cobalt, both sophisticated business parties who negotiated the Advisory Contract at arm's length, agreed to the "exclusive jurisdiction of the United States District Court for the Southern District of New York in any action, suit or proceeding arising out of or relating to this Engagement or any of the transactions contemplated hereby, and agrees that any such action, suit or proceeding shall be brought only in such court." Furthermore, NYBAY and Cobalt agreed that their Forum Selection Clause represented their "entire understanding" and

"supersedes and cancels any prior communications, understandings and Engagements between the parties with respect to the subject matter" set forth in the Advisory Contract.

This Court has repeatedly held that forum selection provisions with the type of broad and unequivocal language agreed upon by the parties in the Advisory Contract here demonstrate that the parties intended to resolve their disputes by judicial action, not arbitration. For example, in the case *Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One*, plaintiff sought to stay a FINRA arbitration filed by defendant pursuant to FINRA Rule 12200 based on a forum selection clause in the parties' broker dealer agreement, which provided:

> The parties agree that all actions and proceedings arising out of this Broker–Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York and that, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such court.

*Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One*, No. 13 Civ. 1319(PAC), 2013 WL 6409348, at *2 (S.D.N.Y. Dec. 9, 2013).

The contract in that case also included a merger clause which stated that the broker dealer agreement represented "the entire agreement between the parties relating to the subject matter hereof, and there are no other representations, endorsements, promises, agreements or understandings ... between the parties relating to the subject matter hereof." *Id*.

Read together, this Court granted plaintiff's motion, holding that the parties "clearly intended to preclude arbitration":

> Here, the Broker–Dealer Agreement provides "positive assurance" that the parties intended to preclude arbitration. The Forum Selection Clause requires that "all actions and proceedings arising out of [the] Broker–Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York." The clause plainly references judicial action by specifying the "United States District Court." Its use of the mandatory language "all actions and proceedings" and "shall" preclude resolution of disputes anywhere other than within

> this district. Furthermore, the parties included a merger clause providing that "there are no other representations, endorsements, promises, agreements or understandings ... between the parties relating to the subject matter hereof.

*Goldman, Sachs & Co.*, 2013 WL 6409348, at *5 (internal citations omitted).

The Forum Selection Clause and Merger Clause agreed upon by NYBAY and Cobalt are substantively identical to those agreed to by the parties in *Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One.* Like the parties in that case, NYBAY and Cobalt clearly intended to resolve their disputes by judicial action in this Court, not arbitration. There is ample case law supporting this proposition. *See Applied Energetics, Inc. v. NewOak Capital Mkts., L.L.C.,* 645 F.3d 522 (2d Cir. 2011) (holding that an agreement's merger clause and a forum-selection clause that required adjudication operated to displace a previous or background agreement to arbitrate); *see also Citigroup Global Mkts. Inc. v. All Children's Hospital, Inc.*, 5 F. Supp. 3d 537, 540 (S.D.N.Y. 2014) (the plain and mandatory language of the Agreement ['*all* actions and proceedings...shall be brought" in a New York court] combined with the comprehensive merger clause "unequivocally and exclusively requires adjudication in a New York court of all disputes arising out of the Agreement and therefore clearly displaces the background FINRA arbitration rule").

In fact, NYBAY and Cobalt went even a step further than the parties in *Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One* by providing mandatory mediation as the only mechanism for alternative dispute resolution prior to the commencement of judicial action. If NYBAY and Cobalt intended to arbitrate their disputes, they would have agreed to it in the Advisory Contract just as they agreed to mandatory mediation.

III.   **THE FORUM SELECTION CLAUSE DISPLACES THE FINRA ARBITRATION EVEN THOUGH THE CLAIMS IN THE FINRA ARBITRATION AND THE SDNY ACTION ARE DIFFERENT**

Cobalt will likely argue that the Forum Selection Clause does not displace the FINRA Arbitration because the SDNY Action and the FINRA Arbitration involve different claims. This Court has specifically rejected this argument when the arbitration claims are "inextricably interlinked" to the claims in the judicial action, as is the case here. *Citigroup Global Mkts. Inc.*, 5 F. Supp. 3d at 542.

In *Citigroup Global Mkts. Inc.*, a plaintiff sought to enjoin defendant from proceeding with a FINRA arbitration based on broad and mandatory forum selection and merger provisions in the parties' broker dealer agreement.  Defendant argued that the FINRA claims arose under a separate underwriter agreement and "mostly concerns alleged wrongdoing by Citigroup in its role as broker-dealer." *Id*. In granting plaintiff's motion, this Court held that the arbitration claims were "inextricably linked to the" broker dealer agreement "even if they sounded more in underwriting or advising." Defendant "could not escape application of the Forum Section Clause" by simply alleging different claims in different venues. *Id*.; *See also Goldman, Sachs & Co.*, 2013 WL 6409348, at *7 (defendant's FINRA claims for various misrepresentations and omissions when plaintiff served as broker dealer pursuant to an underwriter agreement were covered by the broad mandatory forum selection clause of the parties' separate broker-dealer agreement because the provision applied to "all actions and proceedings arising out of [the] Broker–Dealer Agreement or any of the transactions contemplated hereby").

Cobalt's FINRA Arbitration claims involve alleged violations of securities laws and FINRA Rules, namely: (1) violation of § 10(b) of the Exchange Act of 1934 and Rule 10b5 (against Mr. Marquez); (2) violation of FINRA Rules (against Mr. Marquez); (3) control person liability under § 20(a) of the Exchange Act of 1934 and *respondeat superior* (against YAC); and

(4) failure to reasonably supervise Marquez (against YAC). However, like the arbitration claims in *Citigroup Global Mkts. Inc. v. All Children's Hospital, Inc.*, these claims are "inextricably linked" with the SDNY Action contract claims as they ultimately relate to the services rendered by NYBAY pursuant to the Advisory Contract, and involve the same Work Product, Project, Debt Financing and Closing. *Citigroup Global Mkts. Inc.*, 5 F. Supp. 3d 537, 542 (S.D.N.Y. 2014).

## IV. THE FORUM SELECTION CLAUSE DISPLACES THE FINRA ARBITRATION EVEN THOUGH THE PARTIES IN THE FINRA ARBITRATION AND THE SDNY ACTION ARE DIFFERENT

Cobalt will also likely argue that the Forum Selection Clause does not displace the FINRA Arbitration because the SDNY Action and the FINRA Arbitration involve different parties. This Court has rejected this argument as well. "[I]t is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.,* 975 F. Supp. 483, 485-86 (W.D.N.Y. 1997) (internal quotations and citations omitted). "In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Nanopierce Tech., Inc. v. Southbridge Capital Mgmt.,* No. 02-0767, 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) (internal quotations and citations omitted).

"A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Weingard v. Telepathy, Inc.*, No. 05 Civ. 2024(MBM), 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005); *see Nanopierce Techs., Inc. v. Southridge Capital Mgmt, L.L.C.*, No. 02 Civ. 0767(LBS), 2003 WL 22882137, at *6 (S.D.N.Y. Dec. 4, 2003) (holding "the Court is satisfied that [the CFO] was 'closely related' to [the transaction in question] such that it was

foreseeable that she would be bound by the Forum Selection Clause in the Purchase Agreement").

Other circuits honors contractual forum selection clause to cover "tort claims against non-signatories" "if 'resolution of the claims relates to interpretation of the contract,' or if the tort claims 'involve the same operative facts as a parallel claim for a breach of contract.'" *Weingard*, *2005 WL 2990645, at *5.*

In the instant case, there can be no serious argument that both Mr. Marquez and YAC are "closely related" to the dispute pending in the SDNY. First, Mr. Marquez is "closely related" to the SDNY Action because he is the managing partner of NYBAY and the signatory (in his institutional capacity as the managing partner on behalf of NYBAY) of the Advisory Contract. He negotiated the terms of the agreement with Cobalt and provided services to Cobalt on behalf of NYBAY pursuant to the Advisory Contract.

Second, YAC is also "closely related" to the SDNY Action because the entity is specifically designated as the broker dealer if the Transaction required one. *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011) ("a third party will have an enforceable right under a forum selection clause 'if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated'") (footnote omitted).

## V.    FINRA RULE 12200 IS INAPPLICABLE BECAUSE COBALT IS NOT A "CUSTOMER" UNDER THE FINRA CODE

Cobalt argues that it must arbitrate its claims against YAC and Mr. Marquez according to FINRA Rule 12200, which mandates arbitration if (i) there is a written agreement to arbitrate or (ii) brought by a customer under certain circumstances.

15

Cobalt's argument here is based on the faulty premise that Cobalt is a "customer" of Mr. Marquez. A person seeking to compel a FINRA member to arbitrate as its "customer" must (1) have an account with the FINRA member or (2) have purchased goods and services from the member. *See Deutsche Bank Sec., Inc. v. Roskos*, No. 15CV534-LTS, 2016 WL 9446863 (S.D.N.Y. Aug. 4, 2016). Cobalt does not meet either criteria. Cobalt does not have and never has had an account with Mr. Marquez or YAC, and has not purchased goods or services from Mr. Marquez or YAC. Cobalt had a contract for services with NYBAY, not Mr. Marquez. Cobalt cannot simply disregard that entity. Even if it can, arguendo, Cobalt is still left with the Advisory Contract it entered into and the Forum Selection Clause, which precludes arbitration for the reasons previously mentioned.

Additionally, the services covered by FINRA relate to activities covered by FINRA's regulation, meaning investment banking and securities, not financial advisory services of the type rendered by NYBAY here. *See UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 325 (4th Cir. 2013) ("when FINRA uses 'customer' in Rule 12200, it refers to one, not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are covered by FINRA's regulation, namely the activities of investment banking and the securities business").

Finally, it bears noting that Cobalt's own allegations that NYBAY failed to provide services worthy of remuneration defeat its claim to be a customer under Rule 12200. The Second Circuit noted:

> [T]he purchase of a good or service from a FINRA member creates a customer relationship… Likewise, when it is clear that no goods or services were provided by the FINRA member, "there is no need to grapple with the precise boundaries of the FINRA meaning of 'customer'" because "no rational factfinder could infer a customer" relationship on such facts.

*Citigroup Global Mkts, Inc. v. Abbar,* 761 F.3d 268, 275 (2d Cir. 2014).

If NYBAY did not provide any services, as alleged by Cobalt in the SDNY Action and the FINRA Arbitration, then the argument about whether Cobalt is a "customer" is largely academic. In any event, it should be left to this Court and not arbitration to decide the nature and scope of services NYBAY provided to Cobalt, as agreed to by the parties and memorialized in their Forum Selection Clause.

## VI.   COBALT WAS REQUIRED BUT FAILED TO ASSERT FRAUD AS A COMPULSORY COUNTERCLAIM IN THE SDNY ACTION

As noted above, the gravamen of Cobalt's FINRA Arbitration, according to their Statement of Claim, is that Mr. Marquez defrauded Cobalt. Specifically, Cobalt alleges that "[Mr.] Marquez held himself and NY Bay out to the public as a registered investment banking when they clearly are not" and that "[t]his operated as a fraud and deception upon Cobalt which justifiably relied on these misrepresentations and omissions of material facts concerning NY Bay as an unregistered broker/dealer." (Michailidis Dec. Ex. 2 ¶¶ 21, 22.)

Of course, Cobalt's claim has no merit as NYBAY disclosed to Cobalt on page 1 of the Advisory Contract that it is not a broker dealer. Putting that aside, Cobalt's remedy for this alleged fraud is to seek rescission of the Advisory Contract and money damages. Yet, Cobalt did not assert any counterclaims when it answered the Complaint in the SDNY Action on September 6, 2019. Under Rule 13(c) of the Federal Rules of Civil Procedure, Cobalt's fraud claim is clearly a compulsory counterclaim and should have been asserted when it responded to the Complaint.

Under Rule 13(a), a claim is considered compulsory if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."

"The test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotations and citation omitted); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004). In interpreting Rule 13(a), "this Circuit generally has taken a broad view, not requiring an absolute identity of factual backgrounds[,] but only a logical relationship between them." *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979) (internal quotations and citation omitted); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 588 (S.D.N.Y. 2010).

Cobalt's FINRA Arbitration claims are certainly related to NYBAY's claim in the SDNY Action as the "essential facts" involved in both matters relate to the Advisory Contract, the Transaction, the Project, the Work Product, the Debt Financing and the Closing.

## CONCLUSION

For the reasons and upon the authorities set forth above, the Court should grant NYBAY's motion and stay the FINRA Arbitration pending the outcome of this case together with such other and further relief as is just and proper.

Dated: New York, New York
March 25, 2020

DUANE MORRIS LLP

By: s/ Evangelos Michailidis
Evangelos Michailidis
1540 Broadway
New York, New York 10036-4086
T: (212) 692-1000
F: (212) 202-4931
emichailidis@duanemorris.com

CECCARELLI LAW FIRM PLLC

By:___s/Joseph J. Ceccarelli_____
       Joseph J. Ceccarelli
48 Wall Street
New York, New York 10005-2903
T: (212) 889-3675
jceccarelli@ceccarellilaw.com

*Attorneys for Plaintiff New York Bay
Capital, LLC.*