**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
:
New York Bay Capital, LLC,                              :
                                                        :   Case No. 19-cv-03618 (GHW)
                    Plaintiff,                  :
                                                        :
       -against-                                    :
                                                        :
Cobalt Holdings, Inc.,                                  :
                                                        :
                    Defendant.                  X
-------------------------------------------------------

---

**DEFENDANT COBALT HOLDINGS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF NEW YORK BAY CAPITAL, LLC'S MOTION TO STAY THE FINRA PROCEEDING, AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION TO COMPEL ARBITRATION AND FOR A STAY**

---

BECKER & POLIAKOFF, LLP
45 Broadway, 17th Fl.
New York, New York 10006
(212) 599-3322
Attorneys for Defendant Cobalt Holdings, Inc.

{N0258635 }

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ................................................................................................. ii

FACTUAL BACKGROUND ................................................................................................1

    I. Cobalt and NYBAY Enter into an Investment Banking Contract ................................1

    II. Marquez and NYBAY's Violation of Federal Securities Laws and FINRA Rules.........2

    III. YAC Failed to Supervise Marquez and His Investment Banking Activities ..................5

    IV. Marquez's Deception........................................................................................6

LEGAL ARGUMENT ..........................................................................................................7

    POINT I. THE FORUM SELECTION CLAUSE IN THE CONTRACT HAS NO BEARING ON THE FINRA PROCEEDING INVOLVING DIFFERENT PARTIES .....7

    POINT II. THE COURT SHOULD COMPEL ARBITRATION OF THE CLAIMS IN THE SDNY ACTION BEFORE FINRA AND STAY THE SDNY ACTION ...............13

CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Applied Energetics, Inc. v. NewOak Capital Mkts., L.L.C., 645 F.3d 522 (2d Cir. 2011) ...................................................................................................................................7

Arnold v. D'Amato, No. 14 CIV. 6457 PAE, 2015 WL 4503533 (S.D.N.Y. July 23, 2015) ................................................................................................................................ 15

Christensen v. Nauman, 73 F. Supp. 3d 405, 410 (S.D.N.Y. 2014) ...................................... 13, 15

Citigroup Global Mkts. Inc. v. All Children's Hospital, Inc., 5 F. Supp. 3d 537, 540 (S.D.N.Y. 2014) ..........................................................................................................7

Citigroup Glob. Markets Inc. v. Abbar, 761 F.3d 268 (2d Cir.2014) ................................... 10, 11

Deutsche Bank Sec. Inc. v. Roskos, No. 15CV534-LTS, 2016 WL 9446863 (S.D.N.Y. Aug. 4, 2016), aff'd, 692 F. App'x 52 (2d Cir. 2017) ..........................................10

Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One, No. 13 Civ. 1319(PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013) .............................................7

Orange Chicken, L.L.C. v. Nambe Mills, Inc., No. 00 CIV. 4730 (AGS), 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000) ................................................................................14

Triad Advisors, Inc. v. Siev, 60 F. Supp. 3d 395 (E.D.N.Y. 2014) ...........................................10

UBS Fin. Servs., Inc. v. Carilion Clinic, 706 F.3d 319 (4th Cir. 2013) .....................................11

**Statutes & Rules**

9 U.S.C.A. § 3 .............................................................................................................................15

FINRA Rule 2010 ........................................................................................................................11

FINRA Rule 2268 ........................................................................................................................11

FINRA Rule 2241 ..........................................................................................................................2

FINRA Rule 3110 ..........................................................................................................................5

FINRA Rule 3270 ..........................................................................................................................3

FINRA Rule 3280 ......................................................................................................................4, 5

FINRA Rule 12101(a) ...................................................................................................9

FINRA Rule 12200 ........................................................................................ 9, 10, 11, 12

FINRA Rule 12409 .................................................................................................11

Securities Exchange Act of 1934 §10(b)..................................................................8

Securities Exchange Act of 1934 Rule 10b5 ...........................................................8

Securities Exchange Act of 1934 §15 ......................................................................9

Securities Exchange Act of 1934 §20(a)..................................................................8

**Other Authorities**

FINRA Regulatory Notice 16-25..............................................................................11

Defendant Cobalt Holdings, Inc., n/k/a Gignet, Inc. ("Cobalt"), by and through its counsel, files this opposition to plaintiff New York Bay Capital, LLC's ("NYBAY") motion to stay the FINRA proceeding entitled <u>Gignet, Inc. v. Young America Capital, LLC and Julio Alfonso Marquez</u>, FINRA Office of Dispute Resolution Arbitration Number 20-00308 (the "FINRA Proceeding") and cross-moves to compel arbitration of the claims in the instant action (the "SDNY Action") before FINRA, and stay the SDNY Action during the pendency of the FINRA Proceeding.

## FACTUAL BACKGROUND

### I. Cobalt and NYBAY Enter into an Investment Banking Contract

On or about August 10, 2017, NYBAY and Cobalt entered into an investment banking contract (the "Contract")[1] by which NYBAY agreed to render financial advisory and other services to Cobalt for the development of a large telecommunications project in Mexico. Notably, in the Complaint filed with this Court, NYBAY characterized the Contract as the "Investment Banking Contract" (<u>see</u> ¶ 20) because that is precisely what it is, but has now conspicuously changed that definition by referring to the same agreement at issue in this case as the "Advisory Contract" in its motion to stay. This change of definition is significant and goes to the heart of the underlying claims that Cobalt has made in its Statement of Claim in the FINRA Proceeding: that NYBAY improperly and unlawfully engaged in investment banking activities.

Per the Contract, Cobalt agreed to pay NYBAY a monthly retainer (which Cobalt paid) and a success fee as a percentage of deal value if and only if (a) an investment transaction closed and (b) the investor was either (i) introduced to [Cobalt] by NYBAY or (ii) participated in the transaction wholly or partly as a result of NYBAY's efforts. For debt transactions, the success fee would be 3% of the amount loaned to Cobalt.

---

[1] <u>See</u> ECF Dkt. No. 50-1.

The Contract was executed on behalf of NYBAY by Julio Marquez ("Marquez") with the title of "Managing Partner." Indeed, all negotiations as to the Contract between NYBAY and Cobalt were handled by Marquez on behalf of NYBAY. NYBAY was unsuccessful in introducing even a single investor to Cobalt, but still claims that it is entitled to a "success fee" for a transaction for which it introduced no investors and helped raise no money.

Marquez makes no effort to mask the fact that he, through NYBAY, an unregistered entity, was engaged in providing financial advice and investment banking services to Cobalt. In its complaint against Cobalt in the SDNY Action, NYBAY states, "Mr. Deschamps' recommendation was NYBAY because of their cross-border, Latin America niche in the Investment Banking industry in New York…" (ECF Dkt. No. 1, Complaint, ¶ 15). Later in the complaint, as stated above, NYBAY unabashedly refers to the Contract as "the Investment Banking Contract." (Id., ¶ 20). In ¶ 28 of the complaint, NYBAY and Marquez state, "With regard to what is commonly known in the _Investment Banking industry in New York_ as a "Tail" Cobalt agreed that '[i]n the event that a portion of the investment amount or loan is paid at a date after the initial closing…the fees will be paid…when the Client or any project-related person or entity receives additional proceeds." (Emphasis added).

**II.     Marquez and NYBAY's Violation of Federal Securities Laws and FINRA Rules**

As a registered representative and registered principal associated with a FINRA firm, Marquez is well aware that acting in the capacity of an investment bank or investment banker requires registration with the SEC and FINRA. NYBAY is not registered as such, yet at the direction and control of Marquez, clearly acted as an investment banker for Cobalt.

FINRA Rule 2241 defines "Investment Banking Services" to,

> "include, without limitation, acting as an underwriter, participating in a selling group in an offering for the issuer or otherwise acting

>in furtherance of a public offering of the issuer; acting as a financial adviser in a merger or acquisition; providing venture capital or equity lines of credit or serving as placement agent for the issuer or otherwise acting in furtherance of a private offering of the issuer."

Additionally, in order to act in the capacity of an investment banker, FINRA requires that an individual take and pass a specific examination known as the Series 79-Investment Banking Representative examination to obtain the required registration to conduct investment banking activities. Marquez does not possess the Investment Banking Representative registration and, as such, is not permitted to engage in investment banking activities. Yet, this is precisely what he did with respect to his actions on behalf of NYBAY, an unregistered entity.

FINRA Rule 3270, titled "Outside Business Activities of Registered Persons" prohibits all registered persons from engaging in any business activities outside the scope of the relationship with their member firm, from which they earn compensation or have a reasonable expectation of receiving compensation, without the prior approval of the person's member firm. In addition to receiving the member firm's approval prior to engaging in any outside business activities, a registered person must report on their Application for Registration in the Securities Industry, commonly known as a "Form U4," all other business activities so that the investing public is aware of all such activities as reported on a registered person's FINRA Broker Check report.

Prior to Cobalt's initiation of the FINRA Proceeding, Marquez's FINRA Broker Check[2] report did not disclose his relationship as the managing partner of NYBAY.[3] He has since revised it to disclose this, only after Cobalt initiated the FINRA Proceeding.[4] It is telling that,

---

[2] FINRA Broker Check is a public website and free tool to research the background and experience of financial brokers, advisers and firms. It is administered by the FINRA which regulates registered broker/dealers and their associated persons in the United States.
[3] A copy of Marquez's Broker Check report as of January 27, 2020 is attached to the Rabinowitz Decl. as Exhibit A.
[4] A copy of Marquez's Broker Check report as of March 18, 2020 is attached to the Rabinowitz Decl. as Exhibit B.

{N0258635 }   3

prior to the initiation of the FINRA Proceeding, Marquez disclosed other outside business activities away from his member firm, Young America Capital LLC ("YAC"), but not his investment banking activities through NYBAY. This fact establishes that Marquez did not receive authorization from YAC to engage in outside investment banking activities, which is a violation of several FINRA rules and known in the industry as "selling away". Also telling is the manner in which Marquez now describes his activities in his FINRA Broker Check report through NYBAY as "conducting investment banking and business consulting", as well as NYBAYs relationship, or lack thereof, with YAC, by stating: "NYBAY in not an affiliate of Young America Capital LLC".[5]

Presumably Marquez's failure to notify YAC and obtain its approval results from the fact that he is unqualified to act as an investment banking representative and would need to share in any compensation derived from his activities through NYBAY with his member firm. Perhaps his failure to inform the firm results from the realization that YAC would not have approved this activity. Either way, his failure to notify YAC about this outside business activities deprived YAC of its ability to supervise and monitor those activities--which it is obligated to do under applicable SEC regulations and FINRA rules--and operated as a fraud on the investing public, including Cobalt.

Another applicable FINRA rule which Marquez violated is FINRA Rule 3280 which addresses registered representatives' participation in private securities transactions. Much like the rule governing a representative's participation in non-securities related outside business activities, Rule 3280 prohibits FINRA associated persons from participating in any private securities transactions without providing written notice to the member firm with which he is associated, describing the proposed transaction, the representative's role and disclosing whether

---

[5] See Exh. B at 5.

{N0258635 }                                    4

and what amount of compensation the representative expects to receive in the transaction. Upon information and belief, Marquez did not provide the required written notice to YAC in accordance with this rule.

Rule 3280 also requires the member firm to either approve or disapprove the representative's participation in the private securities transaction, and if approved, the member firm must record the transaction on its books and records and the member firm must supervise the transaction as if it were executed by the member firm directly. Because Marquez did not seek nor obtain approval from YAC before entering into the Contract with Cobalt on behalf of NYBAY, Marquez violated FINRA Rule 3280.

### III. YAC Failed to Supervise Marquez and His Investment Banking Activities

One of the primary principles of the securities industry is a broker/dealer's obligation and responsibility to supervise the sales practice activities of its associated persons. This obligation is codified in FINRA Rule 3110 entitled "Supervision" which requires member firms to establish and maintain a system to supervise the activities of each associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules. Clearly, YAC failed to reasonably supervise Marquez in connection with his investment banking activities through NYBAY.

YAC made no efforts to detect that one of its representatives was engaging in private securities transactions and outside business activities in the open through an unregistered entity, NYBAY, which clearly and notoriously holds itself out to the investing public as an investment banking firm. YAC has an affirmative obligation to take reasonable measures to ensure that its representatives are not doing precisely what Marquez has done.

A simple internet search of Marquez reveals that on his LinkedIn profile, he lists his title

as "Director Investment Banking Latin America" for YAC even though he does not possess the required registration to engage in investment banking activities.[6] He lists certain securities registrations that his official Broker Check report does not include, and incredibly lists his association as "Partner" with NYBAY.

NYBAY also has a website in which it describes itself as "…a New York-based boutique cross-border investment banking firm experienced in providing financial advisory services in connection with mergers, acquisitions and capital raising initiatives for foreign clients."[7] The first person listed on the "Our Team" page of the site is Marquez who is clearly held out as the chief executive of NYBAY.[8] Even a cursory review of publicly available information on Marquez could have led YAC's compliance and supervisory personnel to detect this false, misleading and unlawful activity.

### IV. Marquez's Deception

Through these various public disclosures, Marquez held himself and NYBAY out to the public as registered in investment banking when they clearly are not. This operated as a fraud and deception upon Cobalt which justifiably relied on these misrepresentations and omissions of material facts concerning NYBAY as an unregistered broker/dealer. Worse, as a registered representative and registered principal of YAC, Marquez is or should be well aware of the rules governing the conduct of investment banking activities, and his obligation to obtain the affirmative approval of his broker/dealer before engaging in private securities transactions and outside business activities away from his broker/dealer. For its part, YAC either knew about and approved of Marquez's unlawful, unregistered investment banking activities, or failed to reasonably supervise its registered representative in violation of federal securities law and

---

[6] A copy of Marquez's LinkedIn profile as of January 9, 2020 is attached to the Rabinowitz Decl. as Exhibit C.
[7] See www.nybaycapital.com (last accessed April 2, 2020).
[8] See https://www.nybaycapital.com/our-team (last accessed April 2, 2020).

{N0258635 }                               6

regulations and FINRA rules. Marquez's self-serving disclaimer in the Contract that NYBAY is not a registered broker/dealer does not relieve him from his obligation to conduct such business through a registered entity that is approved to conduct such activities.

## LEGAL ARGUMENT

### POINT I

### THE FORUM SELECTION CLAUSE IN THE CONTRACT HAS NO BEARING ON THE FINRA PROCEEDING INVOLVING DIFFERENT PARTIES

Contrary to NYBAY's contentions, the forum selection clause in the Contract has no bearing on the FINRA Proceeding. Instead, the FINRA Proceeding is required to proceed before the FINRA Office of Dispute Resolution for the following reasons.

First, unlike the cases cited by NYBAY on the alleged enforceability of the forum selection clause[9], here the two matters involve different parties. The FINRA Proceeding was brought by Cobalt against Marquez and YAC, neither of which is a party to the SDNY Action or a signatory to the Contract containing the forum selection clause. Furthermore, NYBAY is not a party to the FINRA Proceeding, and, as such, does not have standing to try to stay the FINRA Proceeding.

As to NYBAYs' contention that the parties are "closely related" such that the forum selection clause should apply to Marquez and YAC, Marquez's recently revised[10] disclosure regarding "Other Business Activities" on his Form U4 completely contradicts this argument. Marquez's U-4 explicitly states:

> Starting in 2013 Mr. Marquez has been engaged in an outside business activity as a Managing Member of NYBAY Capital f/k/a

---

[9] See, e.g., Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One, No. 13 Civ. 1319(PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013); Applied Energetics, Inc. v. NewOak Capital Mkts., L.L.C., 645 F.3d 522 (2d Cir. 2011); Citigroup Global Mkts. Inc. v. All Children's Hospital, Inc., 5 F. Supp. 3d 537, 540 (S.D.N.Y. 2014).
[10] It is worth noting that Marquez only revised his U4 to make these required disclosures after Cobalt initiated the FINRA proceeding against him. See Rabinowitz Decl., Exh. B.

>NYMEX Capital. The organization is a business consulting firm specializing in Latin American companies. The firm's offices are located at 48 Wall St NY NY 10005. **Nybay is not an affiliate of Young America Capital, LLC.** His Duties include investment banking and business consulting. Mr. Marquez will receive consulting fees from Nybay clients. Mr. Marquez is the managing member of Nybay Capital and will dedicate time as needed to these endeavors.[11]

Second, the issues involved in the SDNY Action and the FINRA Proceeding are not identical. The SDNY Action is a finder's fee/breach of contract case seeking monetary relief based on the following claims: (1) breach and anticipatory repudiation of contract; (2) *quantum meruit*; (3) unjust enrichment; and (4) indemnification. The claims alleged in the FINRA Proceeding, on the other hand, involve violations of securities laws and FINRA Rules, namely: (1) violation of §10(b) of the Exchange Act of 1934 and Rule 10b5 (against Marquez); (2) violation of FINRA Rules (against Marquez); (3) control person liability under § 20(a) of the Exchange Act of 1934 and *respondeat superior* (against YAC); and (4) failure to reasonably supervise Marquez (against YAC).

Briefly, the claims in the FINRA Proceeding arise from NYBAY's acting as an investment banker for Cobalt at the direction of and under the control of Marquez, despite the fact that NYBAY was not and is not registered with the SEC nor any state as an investment adviser, nor registered with the SEC and FINRA as a broker/dealer. Moreover, Marquez acted in this manner even though he does not possess the Investment Banking Representative registration (FINRA registration Series 79) and as such, was not and is not permitted to engage in investment banking activities. Nor did Marquez disclose his outside business activities through NYBAY on his Form U4 Securities registration form, as required by securities industry regulations. These issues are clearly distinct from the claims at issue in the SDNY Action.

---

[11] Rabinowitz Decl., Exh. B.

{N0258635 }                                    8

Third, the reason that Cobalt initiated its claims against Marquez and YAC before the FINRA Office of Dispute Resolution was that those claims are **required** to be brought in that forum, and cannot be brought anywhere else. YAC has been registered as a broker/dealer with the SEC pursuant to §15 of the Securities Exchange Act of 1934, and a FINRA-member firm since March 2010. It has employed or associated Marquez as a registered representative since December 2015 and is responsible for the supervision of Marquez's securities-related activities. For his part, Marquez has been registered in the securities industry for 22 years, having been associated with seven different firms during that time period. He holds four securities licenses including two principal registrations. Marquez is also the managing partner of NYBAY, which is not registered as a broker/dealer or investment adviser.

As alleged in the Statement of Claim in the FINRA Proceeding, Cobalt was a public customer of Marquez, a registered representative who has been continually registered with a FINRA member firm during the time period at issue in the FINRA Proceeding. The FINRA Code of Arbitration Procedure for Customer Disputes (the "Code"), Section 12101(a) provides, "The Code applies to any dispute between a customer and a member or associated person of a member that is submitted to arbitration under Rule 12200 or 12201." Code Section 12200 provides:

> Parties **must** arbitrate a dispute under the Code if:
> • Arbitration under the Code is either:
> (1) Required by a written agreement, or
> (2) Requested by the customer;
> • The dispute is between a customer and a member or associated person of a member; and
> • The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

In other words, arbitration is mandatory as to YAC and Marquez pursuant to FINRA Rules because: (1) it has been requested by the public customer, Cobalt; (2) the dispute is between Cobalt, a FINRA member firm (YAC), and an associated person of a member (Marquez); and (3) the dispute arises in connection with the business activities; i.e. the "Investment Banking Agreement" drafted and signed by Marquez and by extension, YAC, which is the broker/dealer with which Marquez is registered.

NYBAY argues that Cobalt is not a "customer" of Marquez. To the contrary, our courts have expressly found that, in cases such as this, where a customer was provided with "a service – investment advice and an introduction and at least some effort to facilitate the [] transaction—and received 'transaction-based selling compensation'" it followed that they were "customers" within the meaning of FINRA Rule 12200. Triad Advisors, Inc. v. Siev, 60 F. Supp. 3d 395, 397 (E.D.N.Y. 2014). The Court stated explicitly, "I see nothing in *Abbar* to support the conclusion that an individual who initiates or facilitates a transaction in return for a finder's fee has not formed a customer relationship within the meaning of Rule 12200." Triad Advisors, Inc. v. Siev, 60 F. Supp. 3d 395, 397–98 (E.D.N.Y. 2014).

NYBAY's reliance on Citigroup Glob. Markets Inc. v. Abbar, 761 F.3d 268 (2d Cir.2014) *("Abbar")* and its line of cases, including Deutsche Bank Sec. Inc. v. Roskos, No. 15CV534-LTS, 2016 WL 9446863 (S.D.N.Y. Aug. 4, 2016), aff'd, 692 F. App'x 52 (2d Cir. 2017), is misplaced. Abbar held that FINRA Rule 12200 should be interpreted like a contract rather than a federal law. Citigroup Glob. Markets Inc. v. Abbar, 761 F.3d 268, 274 (2d Cir. 2014). However, Abbar predates the July 2016 FINRA Regulatory Notice 16-25[12] which provides that FINRA Rule 12200 is subject to the approval of the SEC pursuant to the APA and that "FINRA rules are not mere contracts" and instead "have the force of federal law." This

---

[12] https://www.finra.org/rules-guidance/notices/16-25 (last accessed March 31, 2020).

Notice reminds members "that customers have a right to request arbitration at FINRA's arbitration forum at any time and do not forfeit that right under FINRA rules by signing any agreement with a forum selection provision specifying another dispute resolution process …" In this Notice, FINRA acknowledged federal appellate court decisions holding that forum selection clauses in agreements between members and customers supersede FINRA Rule 12200 requirements, but stated that it finds these holdings to rest on the incorrect assumption that the duty to arbitrate under FINRA Rule 12200 is contractual. As it further explained, such an assumption ignores the Exchange Act and the regulatory framework thereunder, thereby concluding that FINRA rules are "not mere contracts that member firms and associated persons can modify[ ]" and a "customer's right to request FINRA arbitration *at any time* under FINRA rules [ ] cannot be superseded or disclaimed by any separate agreement." FINRA also cautioned its members that any attempt to deny or limit such a right would violate FINRA Rules 2010, 2268 and 12200 and may subject the member to disciplinary action. Cobalt submits that, for this reason, NYBAY did not submit any sworn statements from Marquez or YAC stating that Cobalt was not their customer. It is also worth noting that, per FINRA Rule 12409, FINRA has the authority to interpret and determine the applicability of all provisions under the Code.

    NYBAY also curiously relies on a Fourth Circuit case, UBS Fin. Servs., Inc. v. Carilion Clinic, 706 F.3d 319 (4th Cir. 2013) which undermines its own position. In that case, the Fourth Circuit held, "Coupling the contextual indicators from FINRA and the dictionary definition of "customer," we thus conclude that when FINRA uses "customer" in Rule 12200, it refers to one, not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are covered by FINRA's

regulation, namely the activities of **investment banking** and the securities business." Id. at 325 (emphasis added). NYBAY's argument seems to be that NYBAY did not render investment banking services to Cobalt. As explained herein, this is belied by NYBAY's own description of the Contract in its complaint as the "Investment Banking Contract."

As to NYBAY's argument that "Cobalt's own allegations that NYBAY failed to provide services worthy of remuneration defeat its claim to be a customer under Rule 12200", Cobalt has never claimed that there was no relationship between NYBAY and Cobalt. Rather, Cobalt has claimed that that relationship did not result in remuneration due to NYBAY, per the terms of the Contract. These are distinct issues and do not render the argument about whether Cobalt is a customer "academic."

Furthermore, in order to be registered with YAC, Marquez completed and executed a Form U4 which required him to: "…agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction."[13]

Lastly, as to NYBAY's claim that Cobalt was required to assert its claims against YAC and Marquez as compulsory counterclaims in the SDNY Action, this is incorrect as FINRA arbitration is mandatory for the reasons discussed herein. In addition, it could not have asserted those claims in the SDNY Action since neither Marquez nor YAC are parties to this case. If Cobalt is denied its ability to arbitrate before FINRA, it has no forum in which to bring its claims against Marquez and YAC, which would be fundamentally unfair. To put it differently, Marquez's deception and his attempts to usurp his regulatory obligations by inserting a forum

---

[13] See Rabinowitz Decl., Exh. D at 15, ¶ 5.

selection clause into the Contract that he knew or should have known was inoperable as against FINRA rules and public policy should not shield him from his mandated requirement to arbitrate disputes with his customers before FINRA.

## POINT II

### THE COURT SHOULD COMPEL ARBITRATION OF THE CLAIMS IN THE SDNY ACTION BEFORE FINRA AND STAY THE SDNY ACTION

In the alternative, should the Court agree with NYBAY that the parties are "closely related" and the claims in the two matters are "inextricably linked", then Cobalt respectfully submits that the Court should compel arbitration of the claims in the SDNY Action before FINRA, and stay the SDNY Action during the pendency of the FINRA Proceeding. This would promote judicial economy and preserve precious party resources, as FINRA proceedings tend to be faster, more streamlined and more cost effective than federal litigation.

"In deciding whether an action should be directed to arbitration, this Court must determine: (i) whether the parties had an agreement to arbitrate; (ii) the scope of that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if some, but not all, of the claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. '[D]oubts concerning the scope of an arbitration clause should be resolved in favor of arbitration.'" Christensen v. Nauman, 73 F. Supp. 3d 405, 410 (S.D.N.Y. 2014) (internal citations omitted) (holding that stay of lawsuit pending outcome of FINRA arbitration was warranted).

As to the first element, whether the parties had an agreement to arbitrate, here, NYBAY operated as the alter ego of Marquez, its managing partner and an associated person who is required to arbitrate customer-initiated claims before FINRA. But for Marquez's utilization of the NYBAY entity, he would not have been able to perpetrate his deception on Cobalt.

Moreover, but for Marquez's licensure and experience in the investment banking world, NYBAY would not have been able to induce Cobalt into signing the Contract. "The Second Circuit has recognized five theories for binding nonsignatories to arbitration agreements: (i) incorporation by reference; (ii) assumption; (iii) agency; (iv) **veil-piercing/alter ego**; and (v) estoppel." Orange Chicken, L.L.C. v. Nambe Mills, Inc., No. 00 CIV. 4730 (AGS), 2000 WL 1858556, at *5 (S.D.N.Y. Dec. 19, 2000) (emphasis added).[14] In addition, in its motion papers, NYBAY admits that NYBAY, Marquez, and YAC are "closely related." For these reasons, NYBAY can be said to be subject to the same "agreement to arbitrate" that all FINRA members and associated persons are subject to. Additionally, if Marquez offered his investment banking services to Cobalt through his unregistered entity NYBAY for the sole purpose of evading/avoiding FINRA jurisdiction and YAC's oversight, that would lead to additional potential regulatory and monetary claims that would best be adjudicated through FINRA.

As to the second element, the scope of the agreement to arbitrate, it would be the same for NYBAY as Marquez's alter ego as it is for Marquez individually, which has already been discussed at length herein.

As to the third element (if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable), NYBAY has asserted no federal statutory claims, so this element is inapplicable. NYBAY has only asserted claims for (1) breach and anticipatory repudiation of contract; (2) *quantum meruit*; (3) unjust enrichment; and (4) indemnification. A panel of impartial FINRA arbitrators has the power, and specific expertise to hear such matters and indeed, does so routinely.

As to the fourth element, all of the claims are subject to arbitration. Instead of the harsher remedy of dismissal of the SDNY Action, Cobalt merely seeks a stay of the SDNY Action

---

[14] See Rabinowitz Decl., Exh. E.

pending the outcome of the FINRA Proceeding so that this Court can maintain jurisdiction over the parties if it should become necessary. See Christensen v. Nauman, 73 F. Supp. 3d 405, 416 (S.D.N.Y. 2014) ("A stay therefore will promote judicial economy, and assure a speedier return to this Court of any claims found derivative than would outright dismissal of this lawsuit."); Arnold v. D'Amato, No. 14 CIV. 6457 PAE, 2015 WL 4503533, at *10 (S.D.N.Y. July 23, 2015)[15] ("[C]ourts in this District that have compelled arbitration, including this Court, have commonly chosen to stay district court proceedings, even where urged to dismiss them"); see also 9 U.S.C.A. § 3 (West). A more judicially economical solution is for Marquez, as the control person of NYBAY, to voluntarily agree for NYBAY to arbitrate this entire dispute before FINRA. That would unburden this Court from the obligation to adjudicate this dispute that lies more properly with FINRA.

---

[15] See Rabinowitz Decl., Exh. F.

{N0258635 }   15

## CONCLUSION

For the foregoing reasons, Cobalt respectfully submits that NYBAY's motion to stay the FINRA Proceeding should be denied, and its cross-motion to compel arbitration of the claims in the SDNY Action before FINRA and stay the SDNY Action during the pendency of the FINRA Proceeding should be granted.

April 2, 2020                                                                **BECKER & POLIAKOFF, LLP**

By:   /s/ Robert I. Rabinowitz
James J. Mahon, Esq.
Robert I. Rabinowitz, Esq.
Sarah Klein, Esq.
45 Broadway, 17th Floor
New York, NY 10006
Telephone:   (212) 599-3322
Facsimile:   (212) 557-0295
jmahon@beckerlawyers.com
rrabinowitz@beckerlawyers.com
sklein@beckerlawyers.com
*Attorneys for Defendant*