```
                                                         USDC SDNY
                                                         DOCUMENT
                                                         ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                             DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                            DATE FILED: 4/27/2020
-------------------------------------------------------------- X
  NEW YORK BAY CAPITAL, LLC,                   :
                                   Plaintiff,  :
                                               :
              -against-                        :         1:19-cv-3618-GHW
                                               :
  COBALT HOLDINGS, INC.,                       :         MEMORANDUM OPINION
                                   Defendant.  :            AND ORDER
-------------------------------------------------------------- X
```

GREGORY H. WOODS, District Judge:

Defendant Cobalt Holdings, Inc. ("Cobalt") hoped to raise funds to finance a large telecommunications project in Mexico. To that end, Cobalt executed a contract with Plaintiff New York Bay Capital, LLC ("NYBAY"), in which NYBAY agreed to assist Cobalt obtain financing. Cobalt eventually obtained funding for the project—but from a source that was not introduced to it by NYBAY. NYBAY demanded that Cobalt pay anyway. Cobalt refused, so NYBAY sued Cobalt. More than nine months later, Cobalt initiated arbitration before the Financial Industry Regulatory Authority ("FINRA") against Julio Marquez, the managing partner of NYBAY, and a broker dealer with whom Marquez is affiliated. FINRA requires its members—including Marquez and his affiliated broker dealer—to agree to arbitrate disputes with customers as a condition of registering with FINRA. Cobalt alleges that Marquez broke FINRA's rules by permitting NYBAY to act as Cobalt's investment banker without registering with FINRA.

NYBAY filed this motion to enjoin the arbitration proceedings before FINRA because the parties' contract contains a forum-selection clause that requires the parties to bring disputes arising out of or related to the contract in the Southern District of New York. Cobalt opposed that motion and cross-moved to compel arbitration of all claims in this action. Because the forum-selection clause in the parties' contract supersedes the agreement to arbitrate in FINRA's rules, NYBAY's motion to enjoin the FINRA arbitration proceeding is GRANTED and Cobalt's motion to compel arbitration is DENIED.

**I. BACKGROUND**

    **A. Facts**[1]

NYBAY "provides financial advisory and other services to national and international clients with a particular emphasis in Mexico." Compl. ¶ 7. Cobalt "is a licensed telecommunications provider in Mexico," which operates there "through its wholly-owned Mexican operating subsidiaries[.]" *Id.* ¶ 8. Cobalt needed to raise funds to develop an $82.5 million telecommunications project in Mexico (the "Project"). *Id.* ¶ 12. To do so, Cobalt entered into a set of agreements with NYBAY.

On July 15, 2017, Cobalt and NYBAY entered into a mutual non-disclosure agreement (the "NDA"). *See* NDA, Ex. A to Compl., Dkt No. 1-1. The NDA contains a non-circumvention provision which states that

> The Parties and their Representative shall not circumvent any relationships of the Party that were established, or that currently exist, prior to the date hereof. This obligation not to circumvent precludes a Party and their Representatives from contacting, either directly or indirectly, any person or entity introduced to the Party or their Representatives by the other Party to negotiate or to conduct any business, without the introducing Party's knowledge and consent, unless the other Party or their Representatives have had an ongoing relationship with such person or entity that can be documented in writing to the introducing Party.

NDA at 2, § 5.

On August 10, 2017, NYBAY and Cobalt entered into a second contract (the "Contract"), under which NYBAY agreed "to act as [Cobalt's] financial advisor in connection with the intended US $25 million debt or equity investment into the Project from third-parties (the 'Transaction')." Contract, Ex. 1 to Declaration of Evangelos Michailidis ("Michailidis Decl."), Dkt No. 50-1, at 1. Section 1 of the Contract provides:

> <u>Services to be Rendered</u>. In connection with this engagement, NYBAY will provide advice and assist [Cobalt] with the business plan, valuation, structuring, negotiation

---

[1] The following facts are undisputed unless otherwise noted. Certain background facts are drawn from NYBAY's complaint ("Compl."), Dkt No. 1.

and implementation of the Transaction.  In particular, we will use our best efforts to
            identify and introduce to you potential investors, partners and/or lenders to complete
            the proposed Transaction, as well as assist you in the preparation and presentation of
            analyses required by such third parties, or other parties identified by you, to properly
            evaluate these opportunities.

*Id.* at 1, § 1.  The Contract further states that "NYBAY is neither a law firm nor an accounting/tax

firm nor a broker-dealer.  Should [Cobalt] require the services of a law firm or accounting/tax firm,

we may recommend several.  Should [Cobalt] require a U.S. broker-dealer, NYBAY will refer

[Cobalt] to Young America Capital LLC ['YAC']."  *Id.*

        Section 2 of the Contract provides:

        Fees.· In consideration for the performance of the services described above, [Cobalt]
        hereby agrees to pay NYBAY the following fees: . . .  Upon the initial signing of this
        Engagement and monthly thereafter for a maximum of three months, [Cobalt] will pay
        NYBAY a non-refundable Retainer payment . . . of US$5,000.00.  Such Retainer will
        be fully credited against any future fee due NYBAY. . . .  Upon the closing of any Debt
        Transaction(s), the Client will immediately pay NYBAY Closing Fee(s) each equal to
        Three Percent (3.0%) of the amount lent to the Client or the Project by a lender, which
        lender was either (i) introduced to the Client by NYBAY or (ii) participated in the
        Transaction wholly or partly as a result of NYBAY's efforts, payable in cash in US
        Dollars on the closing day and as a condition to closing, by certified check or wire
        transfer.

*Id.* at 1-2, § 2.  Section 2 also states "[i]n the event that a portion of the investment amount or loan is

paid at a date after the initial closing, the related fees will be paid if and when [Cobalt] or any

Project-related person or entity receives additional proceeds."  *Id.* at 2, § 2.  The Contract was

executed on behalf of NYBAY by Julio Marquez as "Managing Partner" of NYBAY.  *Id.* at 5.

        The Contract contains a forum selection clause.  Section 7 of the Contract provides

        Governing Law.  This Engagement shall be governed and construed in accordance
        with the Laws of the State of New York without giving effect to the choice of law or
        conflict of law principles thereof.  Each party hereby irrevocably submits to the
        exclusive jurisdiction of the United States District Court for the Southern District of
        New York any action, suit or proceeding arising out of or relating to this Engagement
        or any of the transactions contemplated hereby, and agrees that any such action, suit
        or proceeding shall be brought only in such court.  Both parties agree to waive their
        rights to jury trials in connection with this Engagement or any dispute arising
        therefrom.  Prior to filing a lawsuit, the parties hereby agree that they will attempt to
        resolve their differences first by submitting the matter for resolution to a mediator,

> acceptable to all parties, and whose expenses will be borne equally by all parties. The mediation will be held in the County of New York, State of New York, on an expedited basis. If the parties cannot successfully resolve their differences through mediation, the matter will be resolved by litigation.

*Id.* at 4, § 7.

The Contract also contains a merger clause. Section 9 of the Contract states

> Complete Engagement; Amendments. This Engagement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and Engagements between the parties with respect to the subject matter hereof. This Engagement may not be amended or modified except in writing signed by both parties hereto. The rights, obligations and liabilities of either party hereunder may not be assigned without the written consent of the other party.

*Id.* at 4, § 9.

Cobalt eventually secured financing from Credit Suisse Group AG ("Credit Suisse"). *See* Compl. ¶ 65. NYBAY did not introduce Cobalt to Credit Suisse. However, in accordance with the terms of the contract, NYBAY prepared and presented work product—including business plans, models, spreadsheets containing financial evaluations and analyses, marketing materials, and Spanish translations for the use of complex documents for the Project. *See id.* ¶ 46. NYBAY demanded payment for its services according to the terms of the contract, but Cobalt has refused to pay.

**B. Legal Background Regarding FINRA**

The Financial Industry Regulatory Authority ("FINRA") is "a self-regulatory organization with authority to oversee securities firms." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.* (*Golden Empire II*), 764 F.3d 210, 214 (2d Cir. 2014) (citation omitted).[2] "Since 2007, FINRA has been a self-regulatory organization established under Section 15A of the Securities Exchange Act of 1934[.]" *UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citing 15 U.S.C. § 78o-3; *Karsner v. Lothian*, 532 F.3d 876, 879 n.1 (D.C. Cir. 2008); SEC Release No. 34-56145,

---

[2] FINRA is "the successor to the National Association of Securities Dealers ('NASD')." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 187 (2d Cir. 2019).

2007 WL 5185330 (July 26, 2007)).  FINRA "has had the authority to exercise comprehensive oversight over 'all securities firms that do business with the public.'"  *Id.* (quoting *Sacks v. SEC*, 648 F.3d 945, 948 (9th Cir. 2011)); *see also* 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007).  "Upon joining FINRA, a member organization agrees to comply with FINRA's rules."  *Id.* (citing FINRA Bylaws art. 4 § 1).[3]  Therefore, FINRA members are "bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein."  *Id.* at 649.

FINRA's rules "obligate[]" its members to arbitrate "dispute[s] with a 'customer' at the customer's demand[.]"  *Id.*  Under Rule 12200 of the FINRA code, "[p]arties must arbitrate a dispute under the Code if:  [A] Arbitration under the Code is either:  (1) Required by a written agreement, or (2) Requested by the customer; [B] The dispute is between a customer and a member or associated person of a member; and [C] The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company."  *Id.* (quoting FINRA Rule 12200);[4] *see also* FINRA Rule 12101(a) ("The Code applies to any dispute between a customer and a member or associated person of a member that is submitted to arbitration under Rule 12200 or 12201.")

The Second Circuit has held that Rule 12200 constitutes an agreement to arbitrate.  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."  *Id.* (quotation omitted).  "FINRA Rules must be interpreted in accordance with principles of contract interpretation."  *Id.* (citation omitted); *see also Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014) ("The arbitration rules of an industry self-regulatory organization such as FINRA are

---

[3] *See* https://www.finra.org/rules-guidance/rulebooks/corporate-organization/application-membership?element_id=4609&rbid=2403.
[4] All FINRA rules are available at https://www.finra.org/rules-guidance/rulebooks/finra-rules.

interpreted like contract terms[.]") (footnote omitted). Thus, "FINRA Rule 12200 is a written agreement to arbitrate[.]" *Golden Empire II*, 764 F.3d at 214.

### C. Procedural History

NYBAY filed the complaint that initiated this action on April 23, 2019. Dkt No. 1. On January 27, 2020, Cobalt initiated an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA") Office of Dispute Resolution (the "FINRA Arbitration") by filing a statement of claim (the "Statement of Claim"). *See* Statement of Claim, Ex. 2 to Michailidis Decl., Dkt No. 50-2. The Statement of Claim names Gignet, Inc.—a successor to Cobalt Holdings, Inc.—as Claimant and Julio Marquez and YAC as Respondents. *See id.* at 1. In the Statement of Claim, Cobalt alleges that Marquez violated United States federal securities laws and FINRA rules because NYBAY acted as an investment bank to Cobalt, even though it is not registered as a broker dealer. *See id.* ¶¶ 9-16. The Statement of Claim also alleges that YAC failed to supervise Mr. Marquez's investment banking activities. *See id.* ¶¶ 17-20.

On March 25, 2020, NYBAY filed a motion to stay the FINRA Arbitration. Dkt Nos. 49-52. The Court construes NYBAY's motion as a request for the Court to enjoin the FINRA Arbitration because the relief NYBAY seeks is an injunction to prevent the FINRA Arbitration from proceeding. *See* Memorandum of Law in Support of Motion to Stay ("Mem."), Dkt No. 52, at 10 (arguing that "this Court has authority to enjoin Cobalt from proceeding with the FINRA Arbitration"). Cobalt subsequently filed a memorandum of law in opposition to the motion to stay the FINRA arbitration and a cross motion to compel arbitration of all claims in this action and to stay this action during the pendency of the FINRA Arbitration. Dkt Nos. 53-55. NYBAY thereafter filed a reply memorandum of law in support of its motion to stay the FINRA arbitration and in opposition to Cobalt's motion to compel arbitration. Dkt No. 56.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). In the Second Circuit, a plaintiff seeking a preliminary injunction must establish: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quotation omitted). The party seeking the injunction carries the burden of persuasion to demonstrate "by a clear showing" that the necessary elements are satisfied. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (alterations omitted).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

NYBAY has demonstrated likelihood of success on the merits because the FINRA Arbitration falls within the Contract's forum-selection clause. In the Contract, NYBAY and Cobalt agreed to "irrevocably submit[] to the exclusive jurisdiction of the United States District Court for the Southern District of New York" for "any action, suit or proceeding arising out of or relating to this Engagement or any of the transactions contemplated hereby[.]" Contract at 4, § 7. The Contract also contains a merger clause. *See id.* at 4, § 9. The Contract is governed by New York law. *See id.* at 4, § 7.

Under New York law, the 'fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). "The best evidence of what parties to a written agreement intend is what they say in their writing[.]" *Id.* (quotation omitted). "Thus, a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its

terms[.]" *Id.*; *see also South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005) ("In cases of contract interpretation, it is well settled that when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." (quotation omitted)).

The Contract forum selection clause is unambiguous. It unambiguously vests jurisdiction for "any action, suit or proceeding arising out" of the Contract in the Southern District of New York. Contract at 4, § 7. The clear language of this forum-selection clause demonstrates that the parties intended to resolve their disputes through litigation, rather than FINRA arbitration.

The forum-selection clause displaces the agreement to arbitrate in FINRA Rule 12200. This conclusion is compelled by the Second Circuit's decision in *Golden Empire II*. In that case, FINRA customers attempted to compel FINRA members into FINRA arbitration. 764 F.3d at 214. The FINRA members argued that a forum-selection clause in a contract between the parties overrode the agreement to arbitrate in FINRA Rule 12200. *Id.* The Second Circuit agreed with the FINRA members and held that "a forum selection clause requiring 'all actions and proceedings' to be brought in federal court supersedes an earlier agreement to arbitrate." *Id.* at 215. That conclusion applies with equal force in this case. As in *Golden Empire II*, the forum-selection clause in the Contract supersedes the parties' agreement to arbitrate in FINRA Rule 12200.[5]

Cobalt's arguments against this conclusion are unpersuasive. Cobalt first argues that the forum-selection clause in the Contract does not apply to the FINRA Arbitration because the FINRA Arbitration is brought against Marquez and YAC, neither of which is a signatory to the Contract. The Contract's forum-selection clause binds its signatories, including Cobalt, to "submit[] to the exclusive jurisdiction of" this Court "any action, suit or proceeding arising out of or relating

---

[5] *See also Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.* (*Golden Empire I*), 922 F. Supp. 2d 435 (S.D.N.Y. 2013) (Sullivan, J.) (granting preliminary injunction to enjoin FINRA arbitration proceeding), *aff'd*, *Golden Empire II*, 764 F.3d 210 (2d Cir. 2014); *Citigroup Glob. Mkts. Inc. v. All Children's Hosp., Inc.*, 5 F. Supp. 3d 537 (S.D.N.Y. 2014) (Rakoff, J.) (same); *Goldman, Sachs & Co. v. N. Carolina Mun. Power Agency No. One*, No. 13 CIV. 1319 PAC, 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013) (Crotty, J.) (same).

to this Engagement or any of the transactions contemplated hereby[.]" Contract at 4, § 7. The issue is thus whether the Contract's forum-selection clause is broad enough to encompass the FINRA arbitration.

It is. The FINRA Arbitration is an "action, suit, or proceeding[.]" *See Golden Empire II*, 764 F.3d at 216 ("[W]e must interpret 'all actions and proceedings' based on its plain meaning as generally understood. Arbitrations are regularly described as 'proceedings' by the United States Supreme Court, our Circuit, New York state courts, the C.P.L.R., and the FINRA rules." (quotation and citations omitted)). And the FINRA Arbitration "ar[ose] out of" or is "relat[ed] to" the Contract. Even a cursory review of Cobalt's Statement of Claim, which initiated the FINRA Arbitration, shows that the FINRA Arbitration is based on the Contract. *See, e.g.*, Statement of Claim ¶¶ 5-16. But for Cobalt's decision to execute the Contract, there would have been no basis for Cobalt to initiate the FINRA Arbitration. Therefore, the FINRA Arbitration falls within the Contract's forum-selection clause, and the Contract required Cobalt to submit its claims to the exclusive jurisdiction of this Court rather than to FINRA.

The fact that the FINRA Arbitration names YAC and Marquez as Respondents does not affect this conclusion. It is true that, as a general matter, a "party who is not a signatory to a contract cannot" be bound by the terms of a contract. *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (collecting cases applying New York law). However, Cobalt *is* a signatory to the Contract, so this rule does not preclude the NYBAY from demonstrating that is likely to succeed on the merits of its argument that the forum-selection clause in the Contract applies to the FINRA Arbitration.[6]

---

[6] Arguing in support of the conclusion that the Court may enjoin the FINRA arbitration, NYBAY argues that YAC and Marquez may be bound by the forum-selection clause even though they are not signatories to the Contract. *See* Mem. at 14 (citing *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 CIV. 0767 (LBS), 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.") (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)). This argument is puzzling. NYBAY is not asking the Court to bind Marquez and

Cobalt also argues that the issues in the FINRA Arbitration are different from the issues in this action. That is both true and irrelevant. The Contract's forum-selection clause applies to any action, suit, or proceeding arising out of or relating to the Contract. The FINRA Arbitration falls within this definition, so the mere fact that Cobalt is pursuing different claims in the FINRA Arbitration is immaterial to whether the forum-selection clause applies to the FINRA Arbitration and thus to NYBAY's likelihood of success on the merits.

Moreover, courts in similar factual circumstances have rejected the argument that they should not enjoin the arbitration proceedings because the claims or issues are different. *See All Children's Hosp. Inc.*, 5 F. Supp. 3d at 542; *Golden Empire I*, 922 F. Supp. 2d at 443; *N. Carolina Mun. Power Agency No. One*, 2013 WL 6409348, at *7-8. These courts have reasoned that where the claims before FINRA "inextricably linked" to claims covered by a forum-selection clause, a defendant cannot "escape application of the [f]orum [s]election clause" by bringing different claims in a FINRA arbitration proceeding. *All Children's Hosp. Inc.*, 5 F. Supp. 3d at 542 (quoting *Golden Empire I*, 922 F. Supp. 2d at 443). The same is true here.

Finally, Cobalt argues that it was required to bring its claims in a FINRA Arbitration proceeding by FINRA rules. But this argument ignores the Second Circuit's holding in materially indistinguishable factual circumstances that "a forum selection clause requiring 'all actions and proceedings' to be brought in federal court supersedes an earlier agreement to arbitrate." *Golden Empire II*, 764 F.3d at 215. Even if it is true that FINRA rules would have required Cobalt to pursue its claims in FINRA arbitration (an issue the Court does not decide), the Contract's forum-selection clause superseded the agreement to arbitrate in the FINRA rules.

---

YAC but rather to bind Cobalt, which is a signatory to the Contract. Therefore, the principle stated in *Nanopierce* is inapplicable in this case.

10

Cobalt resists this conclusion by pointing to FINRA Regulatory Notice 16-25 (July 2016), in which FINRA stated that "FINRA rules are not mere contracts" but rather "have the force of federal law." Forum Selection Provisions Involving Customers, Associated Persons and Member Firms, FINRA Notice 16-25, 2016 WL 4060371, at *3 (July 22, 2016). But the Court is bound to apply the Second Circuit's clear holding in *Abbar* that "[t]he arbitration rules of an industry self-regulatory organization such as FINRA are interpreted like contract terms[.]" 761 F.3d at 274 (footnote omitted). A similarly situated district court in the Ninth Circuit rejected the argument Cobalt offers here. *See Binkele v. Ausloos*, No. 2:19-CV-01079-APG-VCF, 2019 WL 7597041, at *2 n.1 (D. Nev. July 16, 2019) ("Ausloos cites to FINRA Regulatory Notice 16 -25 (July 2016), which says [*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014), a case which the Second Circuit approvingly cited in *Golden Empire II*] and cases holding similarly are incorrect. But I am bound by Ninth Circuit precedent and FINRA has no authority over federal courts in this regard."). Like the court in *Binkele*, the Court must follow binding precedent, even if it conflicts with FINRA guidance on an issue.

For similar reasons, Cobalt's argument that if it is "denied its ability to arbitrate before FINRA, it has no forum in which to bring its claims against Marquez and YAC"—a result Cobalt deems "fundamentally unfair"—is unavailing. Opposition to Motion to Stay, Dkt No. 54, at 12. Cobalt has a forum in which to bring its claims against Marquez and YAC because, pursuant to the forum-selection clause in the Contract, it can bring them in this Court. As noted above, the Second Circuit held in *Golden Empire II* that a forum-selection clause supersedes the agreement to arbitrate in the FINRA rules. Therefore, the forum-selection clause in the Contract both permits and requires Cobalt to bring its claims against Marquez and YAC in the Southern District of New York, notwithstanding FINRA guidance to the contrary. Accordingly, NYBAY has shown a likelihood of

success on the merits with respect to its argument that the FINRA Arbitration falls within the Contract's forum-selection clause.[7]

### B. Irreparable Harm

NYBAY will suffer irreparable harm if a preliminary injunction is not granted. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) (quotation omitted). "The showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotation omitted).

It is hornbook law that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotation omitted). Applying this principle, courts in similar cases have easily concluded that a litigant seeking to stay arbitration had demonstrated irreparable harm because "[a]s a matter of law, there is irreparable harm when a party is compelled to arbitrate without having agreed to arbitration because that party is forced to expend time and resources arbitrating an issue that is not arbitrable." *N. Carolina Mun. Power Agency No. One*, 2013 WL 6409348, at *8 (quotation and alterations omitted); *see also Golden Empire I*, 922 F. Supp. 2d at 439 ("The parties do not dispute that Goldman will suffer irreparable harm if it is improperly forced to arbitrate." (citations omitted)); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (holding that irreparable harm occurs where a movant is "forced to expend time and resources arbitrating an issue that is not arbitrable"). The analysis is not as straightforward in this case as in those cases, however, because NYBAY is not a party to the FINRA Arbitration and thus, even if the

---

[7] In light of this holding, the Court need not address the parties' arguments regarding whether Cobalt is a "customer" of NYBAY.

FINRA Arbitration goes forward, *NYBAY* will not be improperly compelled to arbitrate. Rather, because the forum-selection clause in the Contract requires Cobalt to bring actions in this Court, *Marquez and YAC* will be improperly compelled to arbitrate.

Nonetheless, NYBAY will suffer irreparable harm absent a preliminary injunction because of the possibility of inconsistent rulings from an arbitrator and the Court.[8] Although the claims in the actions are different, there is substantial overlap between the subject matter of this lawsuit and the FINRA Arbitration because both actions are based on the Contract. And the Court might be expected to give preclusive effect to the arbitrator's findings. *See CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration." (quotation omitted)). Consequently, because of the specter of inconsistent judgments from this Court and the arbitrator, NYBAY will suffer irreparable harm absent a preliminary injunction staying the arbitration. Because NYBAY has demonstrated a likelihood of success on the merits and irreparable harm, it is entitled to a preliminary injunction to enjoin the FINRA Arbitration.[9]

---

[8] *See Gov't Emps. Ins. Co. v. Strutsovskiy*, No. 12-CV-330, 2017 WL 4837584, at *6 (W.D.N.Y. Oct. 26, 2017) ("[M]ultiple federal and state courts have concluded that wasting time and resources in arbitrations that might result in awards inconsistent with future judicial rulings constitutes irreparable harm sufficient to stay arbitration."); *Allstate Ins. Co. v. Hisham Elzanaty*, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013) ("[T]here is a concern here with wasting time and resources in an arbitration with awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective."); *Gov't Emps. Ins. Co. v. Strut*, No. 19-CV-728V, 2019 WL 6338023, at *8 (W.D.N.Y Nov. 26, 2019) (noting that where a litigant "will face the prospect of inconsistent judgments between arbitration proceedings and from this case," the litigant had demonstrated irreparable harm); *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) ("Permitting these individual claims to proceed to arbitration while their claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case. In the interests of judicial economy, arbitration of such unpaid claims is stayed pending a decision in the present case."); *see also Keep on Kicking Music, Ltd. v. Hibbert*, 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017) (enjoining a litigant from pursuing claim in a foreign action because "[t]he specter of inconsistent rulings . . . constitutes irreparable harm") (citation omitted); *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19-CV-1296 (PKC), 2019 WL 1559173, at *5 (S.D.N.Y. Apr. 9, 2019) ("Jolen has demonstrated irreparable harm because the specter of inconsistent rulings constitutes irreparable harm, along with the time and expense necessary to re-litigate the claims.") (alterations and quotation omitted).

[9] Because the Court has decided to grant a preliminary injunction in favor of NYBAY, it need not linger over Cobalt's motion to compel arbitration of the claims in this action and for a stay of the proceedings here. For the reasons stated in this opinion, that request is denied.

## IV. CONCLUSION

For the foregoing reasons, NYBAY's motion to enjoin the FINRA Arbitration is GRANTED and Cobalt's motion to compel arbitration and stay the proceedings in this Court is DENIED. The Clerk of Court is directed to terminate the motions pending at Dkt Nos. 49 and 53.

SO ORDERED.

Dated: April 27, 2020

_____
GREGORY H. WOODS
United States District Judge