UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
New York Bay Capital, LLC,

                              Plaintiff,           Case No. 1:19-cv-03618-GHW

       -vs-

Cobalt Holdings, Inc.,

                             Defendant.
------------------------------------------------------------------X


## JOINT PRETRIAL ORDER


**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036
Tel: (212) 692-1000
Fax: (212) 202-4931
*Attorneys for Plaintiff New York Bay Capital LLC*

**BECKER & POLIAKOFF, LLP**
45 Broadway, 17th Floor
New York, NY 10006
Tel: (212) 599-3322
Fax: (212) 557-0295
*Attorneys for Defendant Cobalt Holdings, Inc.*

**CECCARELLI LAW FIRM PLLC**
48 Wall Street
New York, NY 10005
Tel: (212) 889-3675
*Attorneys for Plaintiff New York Bay Capital LLC*

Plaintiff New York Bay Capital, LLC ("<u>Plaintiff</u>" or "<u>NYBAY</u>") and Defendant Cobalt Holdings, Inc. ("<u>Defendant</u>" or "<u>Cobalt</u>"), by and through their counsel, file this Joint Pretrial Order pursuant to Rule 5(A) of Your Honor's Individual Rules of Practice.

**(i)      *Full caption of case.***

New York Bay Capital, LLC v. Cobalt Holdings, Inc.

**(ii)     *The names, law firms, addresses, and telephone and fax numbers of trial counsel.***

<u>For Plaintiff:</u>

Evangelos Michailidis
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
T: (212) 692-1000
F: (212) 202-4931

Joseph J. Ceccarelli
CECCARELLI LAW FIRM PLLC
48 Wall Street
New York, New York 10005-2903
T: (212) 889-3675

<u>For Defendant:</u>

James J. Mahon
Sarah Klein
BECKER & POLIAKOFF, LLP
45 Broadway, 17th Floor
New York, NY 10006
Tel: (212) 599-3322
Fax: (212) 557-0295

**(iii)** *A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction.*

Plaintiff's Position:

A limited liability company "takes the citizenship of each of its members."*Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012). To determine an individual's citizenship for diversity jurisdiction purposes, the Court must look to the party's domicile. *Sanial v. Bossoreale*, 279 F.Supp 940, 943 (S.D.N.Y. 1967). Plaintiff's members and their respective domiciles are as follows:

| Member | Domicile | State Citizenship |
|---|---|---|
| Julio Marquez | 305 East 86th Apt 19P<br>New York, NY. 10028 | New York |
| Vanessa Ruiz | 5 de Mayo Sur 29. Col. Centro<br>Zitacuaro, Mexico. 61500 | Mexico |
| José Luis Terreros | Diagonal 39 Oriente, No.3905<br>Puebla, Mexico | Mexico |
| Tatiana Dawidowitsch | Avenuda Epitacio Pessoa 1254, # 501<br>Rio de Janiero, Brazil 22410-090 | Brazil |
| Clyte Nayigiziki | 101 Great Salt Lake Road<br>Laredo, TX 78041 | Texas |

When a party is a traditional corporation, 28 U.S.C. § 1332(c) governs the diversity jurisdiction analysis. Section 1332(c) provides that "a corporation shall be deemed to be a citizen of every state and foreign state by which it has been incorporated and of the state or foreign state where it has its principal place of business." Defendant is a business corporation organized and existing under the laws of the State of Delaware with a principal place of business at 101 Waukegan Rd., Suite 650, Lake Bluff, Illinois 60044.

Accordingly, none of the members of NYBAY shares the same domicile as Cobalt. Additionally, as alleged in the Complaint, NYBAY alleges damages of approximately $4 million, well in excess of the $75,000 requirement for diversity jurisdiction.

Defendant's Position:

Cobalt concurs with NYBAY's jurisdictional analysis and admits that subject matter jurisdiction is present.

**(iv)** *A brief summary by each party of the claims and defenses that the party asserts remain to be tried, including all claims and defenses previously asserted which are not to be tried.*

Plaintiff's Position:

The parties entered into a Non-Disclosure Agreement ("NDA") on July 15, 2017 and a financial advisory service agreement (the "Advisory Agreement") on August 11, 2017, under which Plaintiff agreed to render various financial advisory services concerning Defendant's development of a large fiber-optic/telecommunications network in Mexico ("Project Maya"). This case is about Cobalt's various breaches of both agreements.

*Cobalt breached the Service Agreement by refusing to Pay NYBAY*

Section 1 of the Advisory Agreement describes the services to be provided by NYBAY as follows: "NYBAY will provide advice and assist [Cobalt] with the business plan, valuation, structuring, negotiation and implementation of the Transaction (initial debt or equity transactions for the Project totaling $25 million dollars). In particular, [NYBAY] will use [its] best efforts to identify and introduce to [Cobalt], potential investors, partners and/or lenders to complete the proposed Transaction, as well as assist you in the preparation and presentation of analyses required by such third parties, or other parties identified by you, to properly evaluate these opportunities."

Plaintiff successfully rendered the promised services over the course of approximately 12 months by developing business plans, financial models, preparing marketing and related presentation and introducing and interacting with various investors, including Credit Suisse, which eventually provided Cobalt with a credit facility of approximately $20 million (the "Credit Suisse Transaction"). Plaintiff played a crucial role in helping Defendant determine the market place of potential investors to evaluate proposals, including the Credit Suisse Transaction, and to negotiate best terms and pricing. The Credit Suisse Transaction became the cornerstone of financing Defendant required to raise even more funds towards completing the Project. Defendant raised a total of approximately $66.2 million during and as a result of NYBAY's engagement.

Section 2 of the Advisory Agreement set forth the fee structure between the Parties. Specifically, bullet point 3 provides that for a debt transaction, such as Credit Suisse Transaction, Cobalt pay NYBAY 3% of the amount loaned to Cobalt or the Project by a lender, if the lender was "either (i) introduced to the Client by NYBAY or (ii) participated in the Transaction wholly or partly as a result of NYBAY's efforts, payable…on the closing day and as a condition to closing." (emphasis furnished). Bullet point 2 provides that for an equity transaction, Cobalt pay pay NYBAY, "6.0% of the amount invested in (Cobalt) or (the Project) by an equity or equity-linked investor, which investor was either (i) introduced to [Cobalt] by NYBAY or (ii)

participated in the Transaction wholly or partly as a result of NYBAY's efforts, payable…on the closing day and as a condition to closing." The Credit Suisse Transaction and the other funds raised by Cobalt during NYBAY's engagement were wholly or partly a result of NYBAY's efforts. Cobalt has refused to pay NYBAY the fee it promised.

*Cobalt breached the Service Agreement by seeking to abridge the "Tail" by improperly terminating the Agreement*

The initial term of the Advisory Agreement under Section 3 was through December 31, 2017. However, the parties could automatically renew the agreement for subsequent three-month extensions "at the option of Cobalt and with NYBAY's consent." To terminate the agreement before the expiration, Cobalt was required to provide written notice, which, according to Section 8 of the Advisory Agreement, needed to be mailed by overnight courier or delivered by hand to NYBAY. The termination date of the Advisory Agreement is relevant because Section 4(c) of the Advisory Agreement provides NYBAY with a 12-month fee "Tail" that runs from the date the agreement ends. The Tail applies to "any person or entity contacted by NYBAY in connection with a Transaction at the request of [Cobalt], or introduced by NYBAY to [Cobalt] (assuming meaningful discussions took place) transacts with [Cobalt]…"

The parties here continued to work together until June 27, 2018, meaning that the parties were within their second three-month renewal, which expired on July 2, 2018 with a Tail that extends to July 2, 2019. Cobalt has alleged that it terminated the Advisory Agreement as of December 31, 2017 or, in the alternative, on June 27, 2018. But in neither instance did Cobalt send the requisite written notice. Cobalt's actions and the position it takes regarding an even earlier termination (despite the parties' clear course of continued conduct through June 2018) are calculated to substantially abridge NYBAY's Tail. NYBAY is entitled to all fees owed to it under Section 1 and 2 from the beginning of its engagement up through the expiration of its 12-month fee tail, July 2, 2019.

*Cobalt breached the NDA by circumventing NYBAY*

Section 5 of the NDA provides, in pertinent part, that Cobalt "shall not circumvent any relationships of [NYBAY] that were established, or that currently exist, prior to the date hereof." It further prohibits Cobalt from "contacting, either directly or indirectly, any person or entity introduced to [Cobalt]…by [NYBAY] to negotiate or to conduct any business, without [NYBAY's] knowledge and consent…" During the course of NYBAY's engagement, it introduced Cobalt to Evercore, Inc. On June 27, 2018, Cobalt engaged Evercore to replace Cobalt as it financial advisor. Cobalt did not obtain NYBAY's consent to engage in business with Evercore without NYBAY's involvement. NYBAY has suffered lost profits because of Cobalt's breach.

*Indemnification under the Service Agreement*

Section 10 of the Service Agreement requires Cobalt to indemnify NYBAY "from and against all losses, liabilities, claims, damages, costs, fees and expenses whatsoever…based upon or arising out of any…breach by [Cobalt] of any covenant…contained herein." Cobalt is required

to pay NYBAY its legal fees and costs for its various breaches of the NDA and the Service Agreement. The provision unmistakably covers claims between contracting parties.

Defendant's Defenses:

The parties' dispute boils down to whether NYBAY is contractually entitled to almost $4 million in "success fees" from Cobalt even though NYBAY did not introduce, much less deliver, a single successful investment to Cobalt for its telecommunications project in Mexico. The answer to that question is clearly "no."

Cobalt engaged NYBAY via an engagement letter executed on August 10, 2017 (the "Engagement Letter") to help Cobalt raise financing for its construction of a new fiber-optic network in Riviera Maya, Mexico (the "Project"). Cobalt agreed in the parties' engagement letter to pay NYBAY a monthly retainer of $5,000 per month for three months (which Cobalt paid) and a success fee as a percentage of deal value *if and only if* (a) an investment transaction closed and (b) the investor "was either (i) introduced to [Cobalt] by NYBAY or (ii) participated in the Transaction wholly or partly as a result of NYBAY's efforts . . . ." For debt transactions, the success fee would be 3% of the amount loaned to Cobalt.

Over the next four months, NYBAY was unsuccessful in introducing even a single investor to Cobalt who invested in the Project. One reason for this lack of success was NYBAY's failure to fully educate itself about the Project or do the leg work necessary to close a successful deal. Indeed, NYBAY's lead banker, Julio Marquez, accessed the Project's data room only once in August 2017 for a grand total of 42 minutes during the entire four-month engagement and NYBAY did not incur a single business expense meeting with prospective investors. Accordingly, Cobalt, being dissatisfied with NYBAY's performance, did not renew the engagement, and the parties' contract terminated according to its terms on December 31, 2017 (with a "tail period" of 12 months until December 31, 2018).

Five months after the contract's termination, on May 31, 2018, Cobalt entered into its *first and only* investment transaction in connection with the Project; Cobalt's Mexican subsidiary, Cobalt Broadband Services, S.A. de C.V. ("Cobalt Mexico"), entered into a Credit and Guaranty Agreement by which it agreed to borrow $20 million from Banco Nacional de México S.A., Integrante del Grupo Financiero Banamex, División Fiduciaria, Como Fiduciario del Fideicomiso Irrevocable F/17937-8 (the "Ultimate Transaction"). Cobalt drew down $15.5 million from the credit facility prior to the end of the tail period of the Engagement Letter. NYBAY had *zero* involvement with this transaction, according not only to Cobalt, but also to Andres Borrego, Chief Executive Officer and Portfolio Manager of Mexican Irrevocable Trust F/179122 ("MEXCO II"), a fund or CKD (*certificados de capital de desarrollo* or capital development certificates) managed by Banco Credit Suisse (México), S.A., Institución de Banca Múltiple, Grupo Financiero Credit Suisse (Mexico), who has confirmed that NYBAY did not introduce MEXCO II to Cobalt or play a role in MEXCO II's decision to invest via the Ultimate Transaction.

On these facts, NYBAY's contract claims should be dismissed. *First*, NYBAY did not "introduce[]" MEXCO II to Cobalt nor did MEXCO II invest due to NYBAY's efforts. As such, NYBAY is not entitled to a success fee under the plain terms of the parties' Engagement Letter. *Second*, NYBAY's anticipatory repudiation claim is predicated on an alleged second round of financing for the Project that has never happened, and, even if it did, NYBAY would have no

basis to claim credit for it. *Third*, any future transactions will fall well outside even the longer "tail period" alleged by NYBAY in its Complaint.

But even if NYBAY is somehow able to demonstrate its involvement in the Ultimate Transaction, which Cobalt denies, NYBAY's damages would be a small fraction of the amount sought in the Complaint ($3.96 million). NYBAY's absolute "best-case" recovery under the Engagement Letter is 3% of the $15.5 million first borrowing ($465,000) less the retainer amount ($15,000) for a total of $450,000. NYBAY is not entitled to its attorneys' fees and costs under Section 10 of the Engagement Letter as our courts construe such provisions narrowly and such provision is not unmistakably clear.

<u>Claims/Defenses Not to Be Tried:</u>

Plaintiff previously asserted claims for anticipatory repudiation, unjust enrichment and quantum meruit. Plaintiff voluntarily withdraws these claims.

Defendant sought to file a counterclaim against Plaintiff for fraud. The Court denied Defendant's motion to assert this counterclaim. (ECF No. 79)

Defendant also sought to assert affirmative defenses seeking to void the Service Agreement as illegal and, separately, as against public policy. The Court denied Defendant's motion to assert these two affirmative defenses. (ECF No. 79)

Defendant filed a Third-Party Complaint seeking to assert claims against Mr. Julio Marquez for violations of Rules 10(b) and 10b-5 and various FINRA Rules and against Young America Capital for control person liability and failure to supervise. Plaintiff moved to dismiss. Defendant voluntarily dismissed the Third-Party Complaint without prejudice. (ECF No. 101)

**(v)** *A statement as to the number of trial days needed and regarding whether the case is to be tried with or without a jury.*

2-3 days without a jury.

**(vi)** *A statement as to whether or not all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent.*

The parties have not consented to trial by a magistrate judge.

**(vii)** *Any stipulations or agreed statements of fact or law to which all parties consent.*

The parties stipulate that all exhibits submitted herewith shall be authenticated as business records unless an objection is set forth therein. Additionally, the parties stipulate to conduct the trial by Zoom or some other similar format. The parties conferred but were unable to stipulate to any facts.

*(viii)   A list of all trial witnesses, indicating whether such witnesses will testify in person or by deposition, and a brief summary of the substance of each witness's testimony.*

| Witness Name | Party | Method of Testimony | Summary |
|---|---|---|---|
| Julio Marquez | Plaintiff | In Person | He is the managing member of NYBAY. He negotiated the terms of the NDA and the Service Agreement at question. He has personal knowledge of the services Cobalt retained NYBAY to perform, NYBAY's performance of these services and the value of these services. He also has personal knowledge of Cobalt's circumvention of the parties' NDA and, further, Cobalt's improper termination of the parties' Service Agreement. |
| Vanessa Ruiz | Plaintiff | In Person | She is a member of NYBAY. She has personal knowledge of the services Cobalt retained NYBAY to perform and NYBAY's performance of these services. |
| Paul Moore | Defendant | In Person | He is the Chairman and Chief Executive Officer of Gignet, Inc. f/k/a Cobalt Holdings Inc. He has personal knowledge of the services Cobalt retained NYBAY to perform, NYBAY's failure to perform those services, and Cobalt's termination of NYBAY. He also has personal knowledge of the ultimate transaction entered into by Cobalt for which NYBAY seeks a fee, and the circumstances surrounding said transaction. |
| Edward Mooney | Defendant | In Person | He is the Director, Corporate Security and Chief Administrative Officer of Gignet, Inc. f/k/a Cobalt Holdings Inc. He has personal knowledge of the services Cobalt retained NYBAY to perform, NYBAY's failure to perform those services, and Cobalt's termination of NYBAY. He also has personal knowledge of the ultimate transaction entered into by Cobalt for which NYBAY seeks a fee, and the circumstances surrounding said transaction. |
| Andres Borrego | Non-Party (On behalf of Defendant) | In Person | He is the Chief Executive Officer and Portfolio Manager of Mexican Irrevocable Trust F/179122 ("MEXCO II"), a fund or CKD (*certificados de capital de desarrollo* or capital development certificates) managed by Banco Credit Suisse (México), S.A., Institución de Banca Múltiple, |

| Witness Name | Party | Method of Testimony | Summary |
|---|---|---|---|
| | | | Grupo Financiero Credit Suisse (Mexico). He has personal knowledge of the ultimate transaction entered into by Cobalt for which NYBAY seeks a fee, and the circumstances surrounding said transaction. |

(ix)   *A designation by each party of deposition testimony to be offered in its case in chief and any counter-designations and objections by any other party.*

Neither party is designating deposition testimony for their case in chief.

(x)   *A list by each party of exhibits to be offered in its case in chief, with a description of the type of objection, if any, for each exhibit.*

Plaintiff:

| Exhibit Number | Description | Objection |
|---|---|---|
| 001 | July 2017 NDA (Mooney 2) | None |
| 002 | July 24, 2017 email from Moore to Mooney, Marquez and Ruiz instructing Mooney to provide Marquez and Ruiz to the data room (Marquez 5) | None |
| 003 | August 10, 2017 emails between Moore, Mooney and Marquez about draft Service Agreement (Mooney 7) | None |
| 004 | August 11, 2017 Advisory Agreement (Moore 2) | None |
| 005 | August 11, 2017 emails between NYBAY and Cobalt regarding financial models (Mooney 9) | None |
| 006 | 8/12/17 Kemkar Email | Objection; not provided in discovery. |
| 007 | August 13, 2017 Email from Ruiz to Moore attaching first draft of the Cobalt business overview (Marquez 12) | None |
| 008 | August 17, 2017 emails between NYBAY and Cobalt regarding financial models (Mooney 10) | None |
| 009 | August 21, 2017 email from Kemker (Cobalt) to Ruiz asking for assistance in review of Spanish marketing materials (Mooney 56) | None |
| 010 | Gignet Spanish Brochure | Objection; not provided during discovery. |
| 011 | August 28, 2017 Email from Marquez to Moore regarding Cobalt financial model (Mooney 58) | None |

| Exhibit Number | Description | Objection |
|---|---|---|
| 012 | August 28, 2017 Email from Ruiz to Moore re Cobalt financial model (Mooney 59) | None |
| 013 | August 28, 2017 Email from Moore to Ruiz and Marquez re Cobalt financial modes (Mooney 60) | None |
| 014 | Financial Model (Mooney 13) | None |
| 015 | Cobalt Presentation Deck (Mooney 14) | Objection; not provided during discovery. |
| 016 | Cobalt Presentation Deck (Mooney 15) | None |
| 017 | Cobalt Presentation Deck (Mooney 15A) | None |
| 018 | Cobalt Presentation Deck November 2017 (Moore 56) | None |
| 019 | September 16, 2017 email from Marquez to Moore providing initial feedback from investors on the Project (Mooney 61) | None |
| 020 | September 19, 2017 email from Marquez to Moore introducing Nexxus as potential mezzanine lender with Credit Suisse (Mooney 62) | None |
| 021 | September 29, 2017 email from Moore to Marquez and Ruiz regarding meeting with LAP and Cobalt instruction to send financial model and Credit Suisse term sheet to LAP (Moore 20) | None |
| 022 | October 2, 2017 Email from Moore to Marquez attaching a copy of the Credit Suisse Term Sheet (Mooney 20) | None |
| 023 | October 2, 2017 Email from Marquez to NYBAY team attaching Credit Suisse Term Sheet (Marquez 17) | None |
| 024 | October 3, 2017 Email setting meeting between Credit Suisse, LAP and NYBAY (Mooney 21) | None |
| 025 | October 4, 2017 Text message from Moore to Marquez suggesting that the parties be "low key" because of Credit Suisse concern that Marquez "cause a issue" (Moore 45) | None |
| 026 | Nexxus Terms and Conditions – Nov 2017 | Objection; not provided in discovery. |
| 027 | November 2, 2017 Email between Marquez and Moore regarding timing of introducing Nexxus to Credit Suisse (Mooney 66) | None |
| 028 | November 3, 2017 Email between Marquez and Moore regarding potential investor and Credit Suisse (Moore 24) | None |
| 029 | November 15, 2017 Email between Marquez and Moore regarding timing of introducing Nexus to Credit Suisse (Mooney 68) | None |

| Exhibit Number | Description | Objection |
|---|---|---|
| 030 | November 20, 2017 Email from Moore to Marquez about potential investor with Credit Suisse (Mooney 60) | None |
| 031 | December 12, 2017 Email from Moore to Marquez including Credit Suisse sales materials (Mooney 71) | None |
| 032 | December 16, 2017 Email between Moore, Marquez and Ruiz about Evercore and Credit Suisse (Mooney 24)(Cobalt 39552) | None |
| 033 | 1/9/18 Email to Board | None |
| 034 | January 19, 2018 Email between Moore, Marquez and Ruiz about timing of Nexxus discussions and Credit Suisse closing (Moore 29) | None |
| 035 | January 24, 2018 Email from Moore to Marquez and Ruiz about Nexxus proposal (Mooney 25) | None |
| 036 | February 15, 2018 Email from Moore to Marquez and Ruiz providing update on Credit Suisse deal (Moore 31) | None |
| 037 | February 15, 2018 Email between Moore, Marquez and Ruiz regarding CIFI and status of Credit Suisse transaction (Marquez 19) | None |
| 038 | 2/17/18 Email re CIFI | None |
| 039 | February 20, 2018 Email from Moore to Nexxus copying Marquez and Ruiz (Mooney 26) | None |
| 040 | 2/27/18 Email re LAP | None |
| 041 | February 28, 2018 email from Moore to Marquez and Ruiz providing information about Credit Suisse deal and asking for assistance with VAT financing (Moore 33) | None |
| 042 | 3/2/18 Moore tells CS about NYBAY (Mooney 45) | None |
| 043 | 3/5-3/6/18 Email re Nexxus | None |
| 044 | March 6, 2018 email from Moore to Ruiz and Marquez regarding potential investor Darby and interest in Credit Suisse deal (Moore 36) | None |
| 045 | March 6, 2018 Email from Moore to Marquez and Ruiz re Nexxus and Credit Suisse (Mooney 27) | None |
| 046 | March 12, 2018 Email between Moore, Marquez and Ruiz regarding Nexxus and modification to Credit Suisse loan documentation (Mooney Exhibit 44) | None |
| 047 | March 12, 2018 Email between Moore, Marquez and Ruiz regarding diligence with Nexxus (Mooney 43) | None |
| 048 | March 12, 2018 Email between Moore, Marquez and Ruiz regarding CIFI and attaching CIFI confidentiality agreement (Mooney 42) | None |

| Exhibit Number | Description | Objection |
|---|---|---|
| 049 | March 15, 2018 Email from Moore to Marquez and Ruiz attaching loan documents to share with Nexxus (Mooney 28) | None |
| 050 | March 15, 2018 Email between Moore, Marquez and Ruiz concerning meeting between Cobalt and Nexxus (Mooney 46) | None |
| 051 | April 6, 2018 Email from Moore to Marquez and Ruiz and CIFI about setting up call with Credit Suisse to discuss possible participation (Mooney 29) | None |
| 052 | April 6, 2018 Email from Moore to Marquez and Ruiz about CIFI attaching Cobalt business overview as of April 2018 (Mooney 47) | None |
| 053 | April 9, 2018 Email between Moore, Ruiz and Marquez regarding call with Credit Suisse and CIFI (Mooney 48) | None |
| 054 | 4/20/18 Email Re Evercore (1) | None |
| 055 | 4/20/18 Email Re Evercore (2) | None |
| 056 | April 23, 2018 Confidentiality Agreement between Cobalt and New Fortress Energy Marketing (Mooney 31) | None |
| 057 | May 31, 2018 Email from Moore to Ruiz claiming that Cobalt will not pay NYBAY for Credit Suisse deal (Mooney 33) | None |
| 058 | May 31, 2018 Emails between Moore, Marquez and Ruiz regarding Cobalt refusal to pay NYBAY for Credit Suisse transaction (Mooney 34) | None |
| 059 | May 31, 2018 Credit and Guaranty Agreement (Mooney 49) | None |
| 060 | 5/31/18 Supplemental Payment Rights Agreement | None |
| 061 | 5/31/18 Invoice (Marquez 23) | None |
| 062 | May 31, 2018 Email from Moore to Marquez and Ruiz refusing to pay NYBAY for Credit Suisse deal (Mooney 51) | None |
| 063 | June 1, 2018 email from Marquez to Moore attaching list of some contacts with Credit Suisse in response to refusal to pay (Marquez 24) | None |
| 064 | 6/11/18 Email re Evercore | Objection; not provided during discovery. |
| 065 | June 15, 2018 Email between Moore, Marquez, Ruiz and Evercore regarding engagement (NYBAY 3569)(Mooney 53) | None |
| 066 | 6/26/18 Moore tells Evercore he is going to term NYBAY (Mooney 36) | None |

| Exhibit Number | Description | Objection |
|---|---|---|
| 067 | June 27, 2018 Email from Moore declaring termination of the Service Agreement (Ruiz 6) | None |
| 068 | June 27, 2018 Evercore Engagement agreement (Mooney 37) | None |
| 069 | July 3, 2018 Cobalt overview for Evercore (Mooney 54) | None |
| 070 | 8/21/18 Moore email to YAC (Mooney 57) | None |
| 071 | Additional Capital Raised June 2018-July 2019 | None |
| 072 | 8/8/19 Financial Statement 2018 (Moore 47) | None |
| 073 | 8/13/19 Termination Notice to Evercore (Mooney 39) | None |
| 074 | 11/8/19 Evercore Re-engagement | None |
| 075 | 12/31/19 - Warrant Valuation (Moore 48) | None |
| 076 | NYBAY Timeline | Objection; not provided during discovery and cannot stipulate to the authenticity of a demonstrative exhibit. |
| 077 | 5/1/20 Amendment to Reengagement | |
| 078 | 10/14/20 Letter to Michailidis from Evercore | Objection; not provided during discovery and inadmissible hearsay. |
| 079 | 12/31/19 Financial Statement 2019 | None |

Defendant:

| Exhibit No. | Description | Objection |
|---|---|---|
| 1 | July 15, 2017 Non-Disclosure Agreement (Mooney 2) | None |
| 2 | August 10, 2017 Email Exchange regarding Interpretation of Engagement Letter (COBALT38834-38841) (Marquez 1) | None |
| 3 | August 10, 2017 NYBAY Engagement Letter (Mooney 8) | None |
| 4 | August 18, 2017 Email from Ruiz Requesting Marketing Material (COBALT38588-38589) (Marquez 13) | None |

| Exhibit No. | Description | Objection |
|---|---|---|
| 5 | August 30, 2017 Credit Suisse New York Term Sheet | None |
| 6 | September 28, 2017 Email from Ruiz to Moore Asking to Share Credit Suisse Term Sheet (COBALT39087) (Marquez 16) | None |
| 7 | October 2, 2017 Email from Moore to NYBAY Enclosing Credit Suisse Term Sheet (NYBAY731-740) (Mooney 20) | None |
| 8 | December 11, 2017 Email from Filip Maes Regarding His "Colleagues at CSAM" (COBALT4266-4267) (Ruiz 4) | None |
| 9 | March 23, 2018 Email in Which CSAM Calls it New Transaction (CSSU_NYBC_3851) | None |
| 10 | April 2018 Credit Suisse CS2CK 15 Investment Memorandum – Cobalt Broadband Services S.A. de C.V. (CSSU_NYBC_2972 to 3035) | None |
| 11 | April 6, 2018 Email from Moore to Borrego regarding "Credit Suisse New York Financing is Dead" (COBALT1929-1930) (Mooney 30) | None |
| 12 | April 19, 2018 Email from Borrego to CSAM Stating That CS Will No Longer Participate in the Transaction (CSSU_NYBC_3710-3711) | None |
| 13 | May 31, 2018 Credit and Guaranty Agreement between Cobalt Broadband Services, S.A. de C.V. and Banco Nacional de Mexico S.A. (CSSU_NYBC_3193-3301) (Mooney 49) | None |
| 14 | May 31, 2018 Email Exchange Between Moore and Marquez Regarding Closing (NYBAY3297) (Mooney 50) | None |
| 15 | May 31, 2018 Email Exchange Between Moore and Marquez Regarding NYBAY's Demand for Fee (NYBAY3547-3548) (Mooney 51) | None |

| Exhibit No. | Description | Objection |
|---|---|---|
| 16 | June 1, 2018 Email from Marquez to Moore Enclosing List of "CS-Related Activities" (NYBAY3559-3561) (Marquez 24) | None |
| 17 | June 4, 2018 Email from Ruiz to Moore Asking What Kind of Structure "CS" Will Allow (COBALT38632) (Marquez 25) | None |
| 18 | June 5, 2018 Email Regarding Flow of Funds (COBALT3767-3769) (Ruiz 3) | None |
| 19 | June 11, 2018 Email from Filip Maes to Moore Regarding (COBALT2724-2725) (Ruiz 2) | None |
| 20 | June 15, 2018 Email Exchange Between Moore and Marquez Regarding NYBAY's Demand for Fee (COBALT33796) (Marquez 26) | None |
| 21 | June 27, 2018 Email from Moore to Marquez Regarding NYBAY's Termination (COBALT5667-5670) (Ruiz 5) | None |
| 22 | June 27, 2018 Email from Moore to Marquez Regarding NYBAY's Termination (COBALT13455-13456) (Ruiz 6) | None |
| 23 | June 27, 2018 Evercore Engagement Letter (DEFENDANT532-547) (Mooney 37) | None |
| 24 | June 30, 2018 Email from Marquez to Moore Regarding Potential New Agreement with NYBAY (COBALT33801-33803) (Marquez 27) | None |
| 25 | August 12, 2019 Notice of Borrowing (COBALT42844-42846) (Ruiz 12) | None |
| 26 | August 13, 2019 Second Borrowing Funds Flow Memorandum (CSSU_NYBC_3333) | None |
| 27 | August 13, 2019 Evercore Termination Letter (COBALT39581) (Mooney 39) | None |

| Exhibit No. | Description | Objection |
|---|---|---|
| 28 | August 26, 2019 Letter from Andres Borrego Regarding NYBAY's Lack of Investment in Ultimate Transaction (CSSU_NYBC_4610) | None |
| 29 | December 12, 2019 Summary of Disbursements to Cobalt Mexico (CSSU_NYBC_4439) (Mooney 79) | None |
| 30 | Cobalt's Data Room Log as of May 18, 2020 | None |

*(xi)* *A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages.*

Under the Advisory Agreement, Plaintiff is entitled to fees for any debt (3% of the loan amount) or equity (6% of the investment) raised "wholly or partly" because of its efforts. Cobalt raised $20 million in debt, with an additional $2.5 million in capitalized interest, so a total of $22.5 million. Plaintiff's fee for this debt is $660,000 before interest or fees.

Cobalt raised an additional $40 million in equity "wholly or partly" because of Plaintiff's financial advisory services in connection with securing initial project finance for Project Maya. Plaintiff is entitled to a $2,400,000 before interest or fees.

Cobalt violated the clear terms of the NDA when it circumvented NYBAY and hired Evercore. Cobalt's clear breach has deprived NYBAY of future profits and opportunities related to the further capitalization of Project Maya. Specifically, Cobalt has received an additional $4.09 million of capital from existing shareholders and warrant exercises and an additional $4 million in debt through Evercore. NYBAY's losses in relation to these additional capitalizations are calculated using the same formula above – 3% for debt and 6% for equity. Plaintiff is entitled to $365,000 for Cobalt's breach on the NDA before interest or fees.

Plaintiff is also entitled to prejudgment interest of 9% under New York law (which governs the Advisory Agreement) and 7.5% under Delaware law (which governs the NDA). Plaintiff's prejudgment interest on the amounts above is $816,560 under the Advisory Agreement and $26,800 under the NDA (both running from June 27, 2018 through the start of trial).

With interest, Plaintiff's total damage is $4,256,969. Plaintiff is also entitled to fees under Section 10 of the Advisory Agreement.

**(xii)** *A statement of whether the parties consent to less than a unanimous verdict.*

Not applicable as the matter will be adjudicated as a bench trial.

Dated: New York, New York
April 5, 2021

                      **DUANE MORRIS LLP**

                      By: *s/ Evangelos Michailidis*
                           Evangelos Michailidis
                      1540 Broadway
                      New York, New York 10036-4086
                      T: (212) 692-1000
                      F: (212) 202-4931
                      emichailidis@duanemorris.com
                      *Attorneys for Plaintiff New York Bay Capital, LLC.*

                      **CECCARELLI LAW FIRM PLLC**

                      By: *s/Joseph J. Ceccarelli*
                           Joseph J. Ceccarelli
                      48 Wall Street
                      New York, New York 10005-2903
                      T: (212) 889-3675
                      jceccarelli@ceccarellilaw.com
                      *Attorneys for Plaintiff New York Bay Capital, LLC.*

                      **BECKER & POLIAKOFF, LLP**

                      By: *s/James J. Mahon*
                           James J. Mahon
                      Sarah Klein
                      45 Broadway, 17th Floor
                      New York, NY 10006
                      Tel: (212) 599-3322
                      Fax: (212) 557-0295
                      jmahon@beckerlawyers.com
                      sklein@beckerlawyers.com
                      *Attorneys for Defendant Cobalt Holdings, Inc.*